STATE of Minnesota, Respondent,

v.

Ernest B. FRENCH, Appellant.

No. C8–86–1006.

Court of Appeals of Minnesota.

March 17, 1987.

■■■■■■■■■■■■■■■■■

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Steven P. Russett, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and SEDGWICK and CRIPPEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Ernest B. French appeals from his conviction for felony murder in the second degree. He seeks reversal based on insufficient evidence demonstrating he caused the victim's death while committing a felony. Alternatively he seeks a new trial, claiming improper admission of his prior felony convictions prohibited him from testifying and the jury was unduly influenced by testimony he wished to remain silent after being given his *Miranda* rights. We affirm.

### FACTS

Bernice Barstow was murdered in the early morning hours of December 14, 1985 and found outside an apartment building located at 719 East 18th Street in Minneapolis. Between 2:00 and 3:00 a.m. that day, Julark Wright, a tenant of that building, awoke to loud noise originating near the back hallway and two yelling voices which she identified as belonging to a woman and a black man.

About that same time, Danny Davis was leaving his uncle's apartment. Hearing someone crying in the back stairway, Davis investigated and saw a woman lying across the lap of appellant Ernest B. French. Appellant and Davis exchanged words and Davis departed.

A loud party later awoke caretaker Alan Ashel in his basement apartment. Heading for that apartment, Ashel saw a coat laying in the back hallway. In that area Ashel saw blood on the walls and carpet, a sledgehammer, a bloody Kleenex, a comb and gloves. Ashel went outside and partially circled the building looking for blood. Finding none, he returned to his apartment and called the police.

Police officers arrived shortly thereafter and spoke with Ashel. They did not themselves investigate outside, although one officer did look through the back door which had a security lock. The officers told Ashel to keep the sledgehammer and the clothing and they left.

Tenant George Griffen arrived home at about 8:00 a.m. He saw the blood on the rear stairway and found a check from the account of R. and R. Litho Company. He later gave the check to the police.

At about 9:30 that morning, a resident of a neighboring apartment building saw Barstow's body in the snow behind appellant's apartment and called the police. The victim was found ten feet from the rear door to 719 East 18th Street. Drag marks were apparent creating a path from the rear door to Barstow's body. Ashel had not looked in that area when he partially encircled the building earlier that morning. Barstow was not wearing a coat. Her pants and undergarments had been pulled down to her knees and her blouse had been pulled up.

Ashel's wife was watching the police from the back door when appellant asked her whether the body was that of a woman. Answering that she did not know, appellant walked back up the stairs.

At about 10:30 a.m., police investigators knocked on the door to appellant's apartment after observing blood on the exterior doorknob. Appellant answered and denied knowing anything about the body. He said his girlfriend was in the bathtub and would not be available for questioning for 15–20 minutes.

One hour later the investigators returned to appellant's apartment. His girlfriend answered, stated appellant was not there, and permitted the investigators to enter. While searching for appellant, the police discovered blood-stained clothes soaking in the bathtub. The investigators also noticed blood on the interior doorknob. They later returned with a search warrant and seized the blood-stained clothing and other items including a knife and checks from the account of R. and R. Litho Company.

A couple of days later, Frank Jackson, a friend of appellant's, spoke with him. Jackson was aware of Barstow's murder and had seen a sledgehammer in appellant's apartment the day before the murder. Jackson asked appellant why he had killed Barstow. According to Jackson, appellant responded:

> He said he didn't mean to do it. He told me that he was in the company of the girl, I don't know if it was another girl there with him and the girls were kind of giving him a hard time, they were calling him names, calling him a nigger and a couple of other names, profanity. And then he said he just lost his head, he went off. He said that he didn't mean to hit her that hard. I asked him, "Why didn't you just beat her up, you know, like with your hand?" and he said he lost his head and he already had the sledgehammer in his hand.

On December 18, 1985, police stopped appellant at East 19th Street and Chicago Avenue. Appellant was arrested and taken to police headquarters where he was given his *Miranda* rights.

Appellant's blood, hair and saliva samples and those of Barstow were analyzed by the bureau of criminal apprehension lab. Blood found in the hallway and on items found there was consistent with Barstow's blood type. Blood on the doorknob to appellant's apartment and on clothing found in appellant's bathtub was identified as human, but not as to specific type. A fingerprint in blood in the rear hallway was determined to be that of appellant.

Appellant was indicted on January 7, 1986 for felony murder in the second degree and second degree intentional murder.

At the omnibus hearing, the court ruled that seven of appellant's prior felony convictions would be admissible for impeachment purposes if he chose to testify. The court later modified that ruling to exclude two of the prior convictions.

At trial, appellant did not testify. After a police officer who assisted in appellant's arrest testified regarding appellant's wish to remain silent after having been given his *Miranda* rights, appellant moved for a mistrial. That motion was denied.

Medical examiner Dr. Garry Peterson testified regarding the circumstances and probable cause of Barstow's death. He stated the blows to the head may have caused unconsciousness, but that the blows inflicted were not life threatening. Dr. Peterson stated the cause of death was hypothermia from being exposed to the extremely cold temperature. He concluded Barstow was alive, but unconscious when dragged outside and that she was dragged and did not crawl.

The jury found appellant guilty of second degree felony murder and the lesser included offense of first degree manslaughter. Appellant was acquitted of second degree intentional murder.

Appellant's motions for judgment of acquittal or a new trial were denied. Appellant's manslaughter conviction was vacated pursuant to Minn.Stat. § 609.04. Appellant was sentenced to a presumptive term of 233 months for felony murder.

## ISSUES

1. Was there sufficient evidence to support appellant's conviction for felony murder in the second degree?

2. Did the trial court abuse its discretion in ruling admissible five of appellant's prior felony convictions?

3. Did the trial court properly rule as harmless error testimony presented regarding appellant's post-*Miranda* silence?

## ANALYSIS

1. Appellant claims insufficient evidence existed to justify a jury verdict finding him guilty of felony murder in the second degree. Specifically, appellant asserts the evidence did not show his assault on the victim caused her death nor that she died while appellant was committing his assault. Our standard of review regarding claims of insufficient evidence is quite limited. *See State v. Merrill,* 274 N.W.2d 99, 111 (Minn.1978).

The statute regarding felony murder in the second degree permits conviction of whoever:

> *Causes* the death of a human being, without intent to effect the death of any person, *while* committing or attempting to commit a felony offense other than criminal sexual conduct in the first or second degree with force or violence.

Minn.Stat. § 609.19(2) (1986) (emphasis added). Appellant insists the evidence presented did not establish he dragged the victim outdoors exposing her to the winter temperatures and causing her death. He also claims his assault and the removal of Barstow's body outside were not part of one continuous transaction thereby voiding application of the felony murder rule.

■ Review of the record exposes no plausible inference other than appellant caused Barstow's death. She did not crawl outside herself and the evidence does not rationally suggest a third party caused her death by exposure.

■ While appellant insists his crime sequence was broken because the State failed to prove Barstow was dragged outdoors immediately after the assault, we disagree. Appellant's acts did not have to occur in immediate succession, providing the criminal transaction involved ongoing conduct. *See Kochevar v. State,* 281 N.W.2d 680, 687 n. 4 (Minn.1979) ("one continuous course of conduct"). "In many cases, the felony-murder rule can apply even though the underlying felony is complete." *Bellcourt v. State,* 390 N.W.2d 269, 274 (Minn. 1986). Here, while Barstow may not have been exposed to the outdoors for a period

of time after appellant's felonious assault, appellant's conduct as a whole was continuous. The evidence was sufficient to support appellant's conviction.

■ 2. Appellant claims the trial court abused its discretion in ruling it would admit evidence of appellant's prior felony convictions if he chose to testify. He asserts that ruling denied him due process and a fair trial because he was effectively precluded from testifying on his own behalf.

A trial court ruling regarding admissibility of prior convictions must be affirmed unless a clear abuse of discretion is shown. *State v. Hicks,* 380 N.W.2d 869, 874 (Minn. Ct.App.1986).

The trial court ruled as admissible the following of appellant's prior convictions:

| Felony | Date of Conviction |
|--------|--------------------|
| Forgery | October 1970 |
| Forgery | June 1975 |
| Forgery | June 1975 |
| Burglary | April 1979 |
| Robbery | April 1979 |

■ Appellant claims the 1970 forgery and 1979 burglary convictions are not admissible under Minn.R.Evid. 609. He asserts the 1970 conviction was discharged over 10 years ago and would only be admissible under rule 609(b), but its prejudicial effect outweighs its probative value. He contends the burglary conviction was not one involving dishonesty or false statement and its admission would be unduly prejudicial. Regarding the remaining three convictions, appellant admits their admissibility under rule 609, but claims they are inadmissible under Minn.R.Evid. 403 because of undue prejudice.

The Minnesota Supreme Court established the following factors to be used in assessing the admissibility of prior convictions:

(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the

importance of defendant's testimony, and (5) the centrality of the credibility issue. *State v. Jones,* 271 N.W.2d 534, 538 (Minn. 1978). Our review of the record and application of these factors indicates no abuse of the trial court's discretion.

 3. Appellant claims the trial court erred in denying a mistrial after a police officer testified regarding appellant's post-*Miranda* silence. He asserts the resulting inference of concealed guilt was so prejudicial that appellant was denied a fair trial.

In denying appellant's motion, the trial court stated:

> The Court has reviewed a number of federal decisions discussing the United States Supreme Court rule in Doyle versus Ohio and the Court is of the opinion that if there is error here, it is harmless error beyond a reasonable doubt. There was no attempt by the prosecutor to focus on that testimony by further questioning and there was no attempt by the prosecutor to highlight that question.

*See Doyle v. Ohio,* 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976) ("it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial"); *State v. Beck,* 289 Minn. 287, 292, 183 N.W.2d 781, 783–84 (1971) (when testimony is given regarding defendant's silence which is not intended as foundation for admission of a voluntary confession, the potential prejudicial effect can be sufficient to warrant a new trial).

We agree with the trial court that any error in receiving the police officer's testimony was harmless because the officer's testimony did not focus on, nor unduly highlight, appellant's silence.

## DECISION

The evidence was sufficient to sustain appellant's conviction. The trial court did not abuse its discretion in ruling admissible appellant's prior felony convictions and did not err in denying a mistrial after testimo-ny was given regarding appellant's post-*Miranda* silence.

Affirmed.