Antonio Clyde SANCHEZ, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 91–124.

Supreme Court of Wyoming.

Nov. 4, 1992.

Public Defender Program: Leonard D. Munker, State Public Defender, Deborah Baume, Assistant Public Defender, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Barbara L. Boyer, Sr. Asst. Atty. Gen., Prosecution Assistance Program: Theodore E. Lauer, Director, Eric R. Bellas, Student Intern, Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

GOLDEN, Justice.

The initial focus of our attention is directed to appellant Antonio Sanchez's claim that he was denied his constitutional right to testify in his own behalf by the insistence of his defense counsel that he not testify. We also address an assertion that defense counsel failed to properly investigate the case and failed to call important witnesses to testify in Sanchez's behalf, as well as a claim that the evidence is insufficient to sustain the conviction for attempted first degree murder.

We will affirm.

### ISSUES

Sanchez initially raised these issues:

I. Was appellant denied effective assistance of counsel due to trial counsel's improper opening argument, failure to present evidence, and evidentiary mistakes, thus warranting an evidentiary hearing?

II. Was the evidence sufficient to convict Appellant of Attempted First Degree Murder?

After initial briefs were filed, this case was remanded to the district court for an evidentiary hearing. Sanchez then presented a supplemental brief which asserts his trial counsel provided ineffective assistance of counsel because he failed to investigate the case, failed to call witnesses in Sanchez's behalf, and denied Sanchez the right to be a witness in his own behalf.

* Chief Justice at time of oral argument.

The state initially presented this summary of the issues:

I. Was appellant denied effective assistance of counsel by a variance between defense counsel's opening statement and the evidence actually adduced at trial, or by trial counsel's alleged failure to discover unspecified facts prior to trial, or by defense counsel's failure to object to allegedly leading questions during the state's examination of its witnesses?

II. Was the evidence sufficient to convict appellant of attempted first degree murder?

These supplemental issues were presented by the state after the remand for the evidentiary hearing:

I. Did appellant choose not to testify on his own behalf based on the advice of his attorneys?

II. Did defense counsel fully investigate appellant's case and present a valid defense on his behalf?

### FACTS

The facts are an unpleasant and miserable combination of marital discord, spouse abuse, and abhorrent violence. Sanchez and his wife Beth had had a short-lived, but very tempestuous relationship and marriage. On August 28, 1990, Beth decided to move to separate quarters because of Sanchez's propensity for abusing her both physically and verbally. Thus, she left the home which she and Sanchez both owned and moved to a motel with her children and sister. Despite the separation, Beth returned to the home she had lived in with Sanchez twice each day in order to transport his daughter Toni (Beth was not Toni's mother) to and from school, since she had to drive her own children to school in any event. She was doing this because Sanchez asked her to.

On September 7, 1990, Beth returned Toni to Sanchez's house. Toni was unable to get through a sliding door entry to the house, because the door was out of its glide track. It appeared to Beth that Sanchez

was not at home as neither of the vehicles he usually drove were parked there. She helped Toni to get in the sliding door and then entered the house to get a few things she needed for her new home. In particular, she wanted a portable ironing board that she thought was in the basement. She sent Toni down to get it, but Toni was unable to locate it.

Beth then went down to the basement herself to attempt to locate the ironing board. After she had been in the basement for a few moments, Sanchez appeared from out of a dark corner holding a .38 caliber pistol and telling Beth that they were "both going out of the world today." Beth cried out and one of her children, hearing her plea for help, went down the basement steps and observed what was happening. Sanchez told that child to leave. Although the child left, he also sent for help. Sanchez then grabbed Beth around the throat and tried to drag her into a room where, in Sanchez's words, "he had everything ready." Beth interpreted this to mean that he had that room set up as the scene of her murder. She pleaded with Sanchez to let her go for the sake of the children and struggled to escape his clutches. During the course of this episode, Sanchez discharged the pistol he was holding to her head and said "you're dead." The shot had not hit Beth, but instead penetrated a floor rafter and then ricocheted harmlessly into another part of the basement.

The struggle between Beth and Sanchez continued and ultimately Beth did get away, though Sanchez continued to try to drag her back down into the basement. Eventually the police arrived, and in the moments before their arrival, Sanchez handed the pistol to Beth and asked her to shoot him "since he was going to the pen anyway." Beth threw the gun down into the basement and it did not discharge. Sanchez also handed Beth a knife and asked her to kill him with it. She refused by throwing it into a garbage can in the kitchen which was at the top of the stairs to the basement. Eventually Beth was able to get completely out of the house and to the safety of the police officers who were now outside. Sanchez remained in

the house and, after a short time, two blasts from a shotgun were heard by those waiting outside. The two shots were fired about ten or fifteen seconds apart. Sanchez then emerged from the house, bleeding profusely from his face. Much of his lower jaw had been blown away by one of the shotgun blasts.

At trial, Beth testified to these events and all pertinent corroborating testimony, and physical evidence was also introduced. In his opening statement, Sanchez's attorney stated that Sanchez would testify and that his testimony would show that Beth's story was so inconsistent with the other evidence that it could not be believed. The theory of defense formulated by Sanchez's lawyers was lack of intent, that is, perhaps Sanchez meant to frighten Beth, but he never intended to kill her. However, at the end of the state's case, Sanchez's counsel was convinced the state had not proved its case and he decided to present no evidence at all, including testimony from Sanchez himself. Of course, defense counsel had vigorously and aggressively cross-examined each and every witness put on by the state and, in the course of that cross examination, put forward virtually the entire theory postulated by Sanchez.

## DISCUSSION

We begin our analysis of Sanchez's claim that his own counsel refused to let him testify on his own behalf by recognizing that the right of a criminal defendant to testify must be tested against more than just the right to the effective assistance of counsel. Criminal defendants have a right to testify on their own behalf and that right is grounded in the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, as well as the Fifth Amendment's privilege against self-incrimination. *Rock v. Arkansas*, 483 U.S. 44, 50–51, 107 S.Ct. 2704, 2708–09, 97 L.Ed.2d 37, 46 (1987).

When this matter was remanded to the district court, no specific instructions or standards for the district court to follow

were enunciated by this court. In retrospect that was, perhaps, a bit like sending these parties into the forest without a compass. The record demonstrates that there was some initial confusion about what procedure should be followed, but, nevertheless, as we shall note in more detail later, the district court did all we could have reasonably expected.

■ The appellate courts of this nation historically have expressed widely divergent views as to how the issue of a defendant's right to testify should be approached. We are satisfied that the most recent pronouncements of a number of appellate courts in our region expound a set of rules which deal with this issue in a most salutary manner. In *LaVigne v. State*, 812 P.2d 217 (Alaska 1991), that court acknowledged the fundamental and broad constitutional base of the defendant's right to testify in his own behalf. *Id.* at 219. The Alaska Court established the following analytical process for treating such issues, and we adopt it for use in this jurisdiction:

> Application of this standard in the present case involves a two step process. First, after showing that his constitutional right to testify has been denied, [defendant] bears an initial burden to show he would have offered relevant testimony had he been allowed to testify at his trial. Because [defendant's] right to testify is a fundamental right to participate in the judicial process, this preliminary burden is a minimal one. We acknowledge that there are myriad reasons why an accused may wish to testify in his own behalf. * * * In order to respect these considerations, we emphasize that the defendant's initial burden of showing he had relevant testimony to offer at his trial is a light one.

*LaVigne*, 812 P.2d at 220–21.

■ In the instant case, Sanchez established that he asked to testify at his trial, and this was borne out by the testimony of his sisters who overheard parts of the conversation between Sanchez and his attorneys during a break in the trial immediately before the defense was to begin presenting its case. At the evidentiary hearing, Sanchez indicated what relevant testimony he would have given if he had been allowed to testify. Thus in this case, Sanchez met his initial burden, i.e., he said he was not permitted to testify and, if he had been, he would have been able to demonstrate that his wife's story was inconsistent with the physical layout of the basement, that she was often an aggressor herself in their verbal and physical disputes, and that the gun had fired accidentally. The two-step process then continues:

> If the defendant's initial burden is met, the burden will then shift to the state to show that denial of his constitutional right was harmless error beyond a reasonable doubt. Unlike the minimal initial burden borne by the defendant, however, the state's burden is a heavy one. This is largely due to the limited ability of appellate courts to judge accurately the possible effect on the jury of a defendant's appearance on the stand. Although we agree that an appellate court can competently weigh the content of the defendant's testimony, a reviewing court is unable to measure the potential impact of many other factors on the jury.
>
> Due to the inherently speculative nature of an appellate court's task in cases like [this], we expect there will be relatively few cases in which the reviewing court can confidently assert that the denial of the right to testify was so insignificant as to constitute harmless error beyond a reasonable doubt. However, we find that application of the *Chapman* [*Chapman v. State of California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)] rule will promote judicial economy without sacrificing fairness in those cases where the state can prove beyond a reasonable doubt that the error was harmless.

*LaVigne*, 812 P.2d at 221–22 (citations omitted).

■ The evidentiary hearing held in the district court in this instance is sufficiently in compliance with the rule we have adopted above that we hold it fulfills the procedural requirements of the rule, as

well as the substantive requirements of giving full play to Sanchez's constitutional rights. Sanchez carried his burden, but so did the state. In this case, Sanchez had the opportunity to present virtually his entire theory of the case to the jury through cross-examination of other witnesses. Even though Sanchez was the only other person actually present when the shot was fired from the pistol, another witness was able to actually see at least a glimpse of Sanchez holding his wife in a headlock and was able to hear some of the goings on in that basement. Sanchez's "relevant testimony" would have been that his wife resisted him, that the gun fired accidentally, and that this particular confrontation was not much different from many others they had in times past. In addition, we note that the jury was so instructed that it could have found Sanchez innocent, or guilty, of attempted first degree murder, attempted second degree murder, attempted voluntary manslaughter, aggravated assault and battery, reckless endangering, battery, or simple assault. We are confident that Sanchez's testimony would not have changed the jury's verdict for the better. Of course, it could not have changed it for the worse, since Sanchez was convicted of the highest crime upon which instructions were given. We are likewise confident that had he testified along the lines he indicated at the evidentiary hearing on this matter, the jury's job would have been made that much easier. *See State v. Hoffman*, 116 Idaho 689, 778 P.2d 811, 814 (1989). In addition, under these circumstances, we are compelled to conclude that Sanchez's attorneys made a sound tactical decision to rest without presenting evidence, because that evidence would have more likely tightened the noose than loosened it. *See Laing v. State*, 746 P.2d 1247, 1249 (Wyo.1987).

■ We also adopt the final prong of the Alaska Supreme Court's analysis of this issue:

To avoid future cases such as [this], we believe that trial judges should take steps to insure that a criminal defendant's failure to take the stand in his or her own defense was the result of a knowing and voluntary decision made by the defendant. To accomplish this, we believe judges should make an on-the-record inquiry after the close of the defendant's case, although out of the jury's hearing, into whether a nontestifying defendant understands and voluntarily waives his right. Such action insures a valid waiver of the defendant's right. It will also assist in any subsequent appellate review of a defendant's claim to the contrary.

*La Vigne*, 812 P.2d at 222; and *see Roelker v. People*, 804 P.2d 1336, 1338–39 (Colo. 1991); *Phillips v. State*, 105 Nev. 631, 782 P.2d 381, 382 (1989).

■ Sanchez also claims his attorneys failed to adequately investigate the case and failed to call witnesses in his defense. Sanchez called a specific list of witnesses to the evidentiary hearing on remand, and each was asked what their testimony would have been. It is unnecessary to go into much detail, because each of these witnesses knew virtually nothing about the case and at most would have testified that they thought Beth Sanchez had a bad temper. A claim of ineffective assistance of counsel cannot be premised upon the failure to call witnesses where none exist or where the witnesses are not called for sound reasons. *Stogner v. State*, 792 P.2d 1358, 1363–64 (Wyo.1990); and *see State v. Smith*, 158 Ariz. 222, 229–31, 762 P.2d 509, 516–18 (1988); *People v. Roybal* 775 P.2d 67, 73 (Colo.App.1989).

■ Finally we address Sanchez's assertion that the evidence is not sufficient to sustain the jury's verdict of guilty of attempted first degree murder. Our standard for reviewing such a contention is well known. *Bouwkamp v. State*, 833 P.2d 486, 493 (Wyo.1992). When the evidence is examined in the light of those standards, we are compelled to conclude that a jury could properly infer from the evidence that Sanchez was lying in wait for his wife and that he had a well-developed plan to kill her and then commit suicide. In furtherance of that plan, he found his wife available for execution in the basement of their home on September 7, 1990; he wrestled her into a

strangle-hold and attempted to drag her into her death chamber with a .38 caliber pistol held to her head; when her struggling became too much of a burden he fired the pistol at her head and, whether it was because of her active struggle to survive, or merely the grace of God, she was not killed. The evidence is sufficient.

The judgment and sentence of the district court is affirmed.