**Daniel Lee HARRIS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 96–74.

Supreme Court of Wyoming.

March 10, 1997.

1116

Sylvia L. Hackl, State Public Defender, Donna D. Domonkos, Appellate Counsel, Cheyenne, for Appellant.

William U. Hill, Attorney General, Paul S. Rehurek, Deputy Attorney General, D. Michael Pauling, Senior Assistant Attorney General, Kimberly A. Baker–Musick, Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN, and LEHMAN, JJ.

MACY, Justice.

Appellant Daniel Harris appeals from the sentence which was entered against him on one count of first-degree felony murder.

We affirm.

### ISSUES

Appellant presents the following issues for our review:

*ISSUE I*

Was reversible error committed when the trial court judge commented on the weight of the evidence showing [the] appellant's guilt and defined reasonable doubt for the jury?

*ISSUE II*

Was it an abuse of discretion for the trial court to deny the appellant's motion for new trial when the jury found the appellant guilty of mutually exclusive crimes?

*ISSUE III*

Was it an abuse of discretion for the trial court to deny the motion for a new trial when the trial court erred in its polling of the jury?

*ISSUE IV*

Can the guilty verdict stand for the attempted first degree sexual assault conviction or the attempted second degree sexual assault conviction when the evidence is clear that the appellant renounced his criminal intentions?

*ISSUE V*

Was it an abuse of discretion for the trial court to deny the motion for judgment of acquittal on the felony murder count when the victim's death was not a part of the *res gestae* or things done to commit the alleged felony?

*ISSUE VI*

Was reversible error committed when the trial court failed to advise the appellant of his right to testify and inquire on the record whether the appellant was voluntarily waiving the right to testify?

*ISSUE VII*

Was it error for the trial court to deny the appellant an instruction on the appellant's theory of the case?

### FACTS

On December 12, 1994, Appellant met the female victim in a Newcastle bar. When the bartender refused to serve Appellant more alcohol, Appellant and the victim left the bar together and got into a pickup.

Appellant drove the pickup to a train depot where he and the victim began kissing and caressing each other. When the victim said that it was too bright at the depot and asked to go some place more private, Appellant drove to a rural road outside of Newcastle where he parked the pickup. Appellant and the victim began kissing again, and Appellant attempted to slide his hand down inside of

the victim's pants. The victim said, "no," and Appellant became angry. He hit her two or three times in the temple area of her head. Appellant then pulled the victim's pants off of her, and he tried to get on top of her. The victim pushed Appellant away with her leg. At that point, Appellant opened the passenger door and shoved the victim out of the pickup. After cursing at the victim, he drove away.

The victim's body was discovered the next morning near the road. Except for the one sock that she was wearing, she was nude. The victim had multiple abrasions and bruises, and she had a broken nose. The autopsy revealed that the actual cause of her death was hypothermia.

Evidence left in the area of the victim's body led the police to Appellant. After the police interviewed Appellant, he was arrested and charged with a number of crimes. Appellant pleaded not guilty to the charges, and a jury trial was held. The jury returned its verdict, finding Appellant guilty of attempted first-degree sexual assault, attempted second-degree sexual assault, first-degree felony murder, criminally negligent homicide, and assault and battery. The jury found him not guilty of involuntary homicide and aggravated assault and battery. The trial court ruled that the other counts merged with the felony murder count and sentenced Appellant on that count. Appellant appealed to this Court.

## DISCUSSION

### A. Trial Judge's Comments

Appellant contends that, during *voir dire,* the trial judge improperly stated that enough evidence existed to show Appellant's apparent guilt. Appellant complains that the trial judge then "exa[c]er[b]ated the problem when he back pedaled into the presumption of innocence and, while explaining this presumption, defined reasonable doubt." Appellant also takes issue with a comment made by the trial judge during the trial which, he insists, could have convinced the jury that the trial judge believed the State's evidence.

■ This Court has stated that the trial judge must " 'be careful and cautious and not comment on the evidence.' " *Phillips v. State,* 597 P.2d 456, 458 (Wyo.1979) (quoting *Peterson v. McMicken (Nelson's Estate),* 72 Wyo. 444, 499, 266 P.2d 238, 261 (1954)). In a trial before a jury, the trial judge must abstain from expressing or indicating, by word, deed, or otherwise, his personal feelings on the weight or quality of the evidence. *Id.* Comments or expressions of opinion on the evidence which have the tendency to indicate bias on the trial judge's part are regarded as being an infringement on the jury's duties and are prejudicial to the defendant. *Id.*

In order to obtain a full understanding of the comments which Appellant complains about in this case, we must put them into context. *See Shaffer v. State,* 640 P.2d 88, 105 (Wyo.1982). During *voir dire,* a prospective juror indicated that he had discussed the case with other people and that the other people had expressed their opinions to him and he had expressed his opinions to them. The juror indicated that, although he would have difficulty ignoring those discussions, he would try to do so. He went on to state, however, that those opinions would have to be proven wrong before he would be able to put them out of his mind. Defense counsel challenged the juror for cause, but the trial court denied his request.

The defense attorney resumed his questioning of the prospective juror. The juror stated that, although according to the law Appellant was presumed to be innocent, he did not believe that Appellant was innocent because of what he had read in the newspapers. He stated that he might not be able to begin his deliberations with a presumption that Appellant was innocent. Defense counsel again asked to have the juror disqualified. The State questioned the juror and objected to his dismissal because he had stated that he would look at the evidence which was presented at the trial to make his decision and that he would return a verdict of not guilty if the evidence showed that there was a reasonable doubt as to Appellant's guilt.

At that point, the trial judge made the following statements in the presence of the prospective jurors:

I don't want to hear a batch of argument. First of all, our system is such that we don't proceed to this stage of a criminal prosecution unless there's some evidence to support the State's position. It does not mean that a defendant is guilty. It does not mean that he's not presumed innocent when we get to this stage of the proceeding. But our system simply is such that there's going to be—that we don't get here unless there's some preponderance of the evidence upon which the State's case rests.

[Defense counsel] is correct that a defendant is entitled—every person is entitled to the presumption of innocence. That means that you as jurors, when you start the process, start with a clean slate. In fact, you start with less than a clean slate. If it were like a scale, you start with the scales tipped in favor of the defendant. The State has to pile enough evidence on its side of the scales that at the conclusion of the trial you are convinced beyond a reasonable doubt that the defendant is guilty, otherwise, you must vote to acquit [him]. You must do it based on the evidence presented in the courtroom, as I've said before, on the law as I instruct you, not on other factors.

So I'll return, sir, to the question that I asked you before and ask in spite—in spite of what you may have heard or in spite of what you may have said, do you think that you're able to decide the case based upon what is presented here and the law as I instruct you?

The juror answered that he did not think that he would be able to do so, and the trial judge excused him.

■ Appellant insists that, in the first paragraph of the quoted material, the trial judge improperly commented that enough evidence existed to show Appellant's apparent guilt. When the trial judge's comments are taken in context, they were not an improper expression of his opinion on the weight of the evidence against Appellant. The comments were nothing more than an attempt by the trial judge to explain the criminal adjudication process to the prospective juror and to determine whether the prospective juror would be able to set his personal beliefs aside if he were selected to be a juror. It is

> "not error for a judge to take steps to make a prospective juror understand that a supposed bias ... will not be grounds for successful challenge for cause if the prospective juror is able to consider the case only on the evidence presented in court under the law as instructed by the court...."

*Summers v. State*, 725 P.2d 1033, 1039 (Wyo. 1986), *confirmed on reh'g*, 731 P.2d 558 (Wyo.1987) (quoting *Gresham v. State*, 708 P.2d 49, 56 (Wyo.1985)). Since the trial judge did not express his personal feelings on the evidence, Appellant was not prejudiced, and his claim must fail. Furthermore, any harm which may have resulted from the trial judge's comments was more than cured by the instructions which informed the jury that it could not consider the fact that Appellant was charged as being evidence of his guilt and that Appellant was presumed to be innocent.

■ Appellant also contends that the trial judge improperly defined reasonable doubt in the second paragraph of the quoted material. It is " 'reversible error [for a trial court] to give a confusing instruction defining reasonable doubt.' " *Collins v. State*, 854 P.2d 688, 699 (Wyo.1993) (quoting *Cosco v. State*, 521 P.2d 1345, 1346 (Wyo.1974)). We conclude, however, that the trial court did not define reasonable doubt in its comments. The trial judge's analogy to the scale was simply a method of explaining to the prospective juror that the State had the burden of proof and that Appellant was entitled to a presumption of innocence. We would note, however, that, if trial judges were to take the simple precaution of discussing these matters with prospective jurors outside of the presence of the remainder of the jury panel, they could prevent impropriety claims from being alleged. We, therefore, urge trial judges to take that precaution in the future.

■ Appellant also takes issue with one other comment which was made by the trial judge during the trial. In that instance, the trial judge stated:

I think it's patently obvious to the jury, but there was no wind, so there's no question about windchill, except the wind generated from running through the bushes.

The trial judge's comment was precipitated by a defense counsel objection to testimony about the effect of windchill on the victim. Appellant contends that this comment could have convinced the jury that the trial judge believed the State's evidence. Appellant does not further explain his contention, and we are at a loss as to how this comment indicated that the trial judge believed the State's evidence. In fact, the trial judge seemed to agree with defense counsel's argument that the wind was not blowing on the night in question. The trial judge's comments did not indicate that he was biased and did not prejudice Appellant.

## B. Mutually Exclusive Crimes

Appellant claims that the trial court abused its discretion when it denied his motion for a new trial. He argues that he was entitled to have a new trial because the jury erroneously found him guilty of violating mutually exclusive crimes when it found him guilty of attempted first-degree sexual assault and attempted second-degree sexual assault and when it found him guilty of felony murder and criminally negligent homicide. Appellant contends that the trial court should have instructed the jury to consider the mutually exclusive crimes in the alternative and in a given order.

This Court has stated:

Trial courts have broad discretion when ruling on a motion for a new trial, and they will not be reversed absent an abuse of such discretion.... An abuse of discretion occurs when the court could not reasonably conclude as it did.

*Carlson v. Carlson*, 888 P.2d 210, 215 (Wyo. 1995) (citations omitted).

In *Rivera v. State*, 840 P.2d 933, 943 (Wyo. 1992), we explained that a defendant may be charged, tried, and found guilty by a jury of different offenses even though he committed the crimes during the same encounter. Additionally, the State "is entitled to charge, try and submit multiple offenses to the jury, *even where a defendant [cannot be] convict-*

*ed"* of all the charges. *Black v. State*, 869 P.2d 1137, 1139 (Wyo.1994) (emphasis added). With regard to mutually exclusive crimes, however, we have stated that, while all the charges may be submitted to the jury, the jury should be instructed that it must decide guilt in the alternative and in a given sequence. 869 P.2d at 1140.

We consider first whether criminally negligent homicide and felony murder are mutually exclusive crimes. A defendant commits felony murder if he, "in the perpetration of, or attempt to perpetrate, any sexual assault, ... kills any human being." WYO. STAT. § 6–2–101(a) (Supp.1996). A person commits criminally negligent homicide if "he causes the death of another person by conduct amounting to criminal negligence." WYO. STAT. § 6–2–107(a) (1988). We have held that the purpose of the felony murder statute is to deter individuals from committing negligent or accidental killings during the perpetration of one of the underlying felonies. *Bouwkamp v. State*, 833 P.2d 486, 492 (Wyo.1992); *see also Richmond v. State*, 554 P.2d 1217 (Wyo.1976). Since the same conduct may violate both statutes, the crimes are not mutually exclusive.

Next, we consider whether attempted first-degree sexual assault and attempted second-degree sexual assault are mutually exclusive crimes. WYO. STAT. § 6–2–303(a) (1988) expressly states that second-degree sexual assault occurs only "under circumstances not constituting sexual assault in the first degree." The plain language of the statute establishes that a person cannot commit both crimes in the same criminal incident. We agree with Appellant, therefore, that attempted first-degree sexual assault and attempted second-degree sexual assault are mutually exclusive crimes. The jury should have been instructed that it was to consider the attempted first-degree sexual assault charge first and that it should move on to the attempted second-degree sexual assault charge only if it found Appellant not guilty of the first-degree charge.

We conclude, however, that the error was harmless. During the jury instruction conference, the trial judge noted that,

although it was possible for the jury to find Appellant guilty of all the charges, convictions could not be entered on all the charges. True to his word, the trial judge ruled at the sentencing that the charges all merged with the felony murder charge, and he sentenced Appellant on that count only. In Wyoming, the sentence is the final judgment in a criminal case. *Vigil v. State,* 563 P.2d 1344, 1349 (Wyo.1977). "There is no judgment against the defendant until sentence is pronounced." *Id.* Appellant was not prejudiced by the jury's findings of guilt on the sexual assault charges because sentences were not entered on those counts.

It did not make any difference under the felony murder statute whether Appellant was found guilty of attempted first-degree sexual assault or attempted second-degree sexual assault as long as he was found guilty of one or the other. As we explain later in this opinion, the evidence was sufficient to support the jury's guilty verdicts on those counts. Both sexual assault charges merged with the felony murder count for sentencing, and Appellant did not suffer prejudice even though the jury was not properly instructed in the verdict form.[1]

## C. Polling of the Jury

Appellant claims that the trial court abused its discretion when it failed to grant his motion for a new trial because two jurors indicated during the jury poll that their verdicts did not match the entire jury's verdict. As we explained earlier in this opinion, trial courts have broad discretion when they rule on motions for a new trial, and we will not disturb their rulings absent a showing that they abused their discretion. *Carlson,* 888 P.2d at 215.

After the jury returned its verdict, defense counsel requested that the jury be polled. During the polling, one juror stated his verdicts as follows:

> THE COURT: Mr. [Juror], attempted first-degree sexual assault?

JUROR: Guilty.

> THE COURT: Attempted second-degree sexual assault?

JUROR: Guilty.

> THE COURT: First-degree felony murder?

JUROR: Not guilty.

> THE COURT: Not guilty?

JUROR: Well, I messed up there. Guilty.

> THE COURT: You may have misunderstood. First-degree felony murder?

JUROR: Guilty.

> THE COURT: Involuntary manslaughter?

JUROR: Not guilty.

> THE COURT: Criminally negligent homicide?

JUROR: Not guilty—or guilty I should have said. I'm sorry.

> THE COURT: Aggravated assault and battery?

JUROR: Not guilty.

> THE COURT: Assault and battery?

JUROR: Guilty.

Another juror responded as follows when the trial court polled her:

> THE COURT: Mrs. [Juror], attempted first-degree sexual assault?

JUROR: Guilty.

> THE COURT: Attempted second-degree sexual assault?

JUROR: Guilty.

> THE COURT: First-degree felony murder?

JUROR: Not guilty.

> THE COURT: You disagree with the verdict form?

JUROR: No, I just can't remember how I voted. Read it again, please.

> THE COURT: I'll start over. Attempted first-degree sexual assault?

---

1. The law on what remedy should be applied when judgments on mutually exclusive convictions are entered is somewhat confused. *See Milanovich v. United States,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961); *United States v. Gaddis,* 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976); *State v. Barton,* 523 So.2d 152 (Fla. 1988); *United States v. Brown,* 996 F.2d 1049 (10th Cir.1993). Since sentences were not entered on the mutually exclusive verdicts in this case, we do not need to decide how we would remedy mutually exclusive sentences.

JUROR: Guilty.

THE COURT: Attempted second-degree sexual assault?

JUROR: Guilty.

THE COURT: First-degree felony murder?

JUROR: Guilty.

THE COURT: Involuntary manslaughter?

JUROR: Not guilty.

THE COURT: Criminally negligent homicide?

JUROR: Guilty.

THE COURT: Aggravated assault and battery?

JUROR: Not guilty.

THE COURT: Assault and battery?

JUROR: Guilty.

The trial judge continued as follows:

Okay. The real point is not to put any of you on the spot, but let me just ask, did all of you look at the verdict form after it was completed by the presiding juror? Is there anyone who did not, raise your hand? Is there anyone who disagrees with the verdict that was returned to the Court? If you do, raise your hand.

None of the jurors responded to the trial judge's questions. At the conclusion of the trial, Appellant filed a motion for a new trial, claiming that the polling of the jury was erroneous, and the trial court denied his motion.

Appellant contends that, when the two jurors indicated that their votes were different than the jury's verdict, the trial judge should have sent the jury back for further deliberations or should have discharged the jury. Appellant maintains that, by questioning the jurors about their verdicts, the trial judge improperly coerced them into accepting the jury's verdict.

■ W.R.Cr.P. 31(d) provides:

When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

See also WYO. STAT. § 7–11–501 (1995); Vargas–Rocha v. State, 891 P.2d 763, 770–71 (Wyo.1995). W.R.Cr.P. 31(d) does not prohibit the trial judge from questioning a juror who has given an uncertain or equivocal answer during the polling.

In United States v. Hernandez–Garcia, 901 F.2d 875, 877–79 (10th Cir.), cert. denied, 498 U.S. 844, 111 S.Ct. 125, 112 L.Ed.2d 94 (1990), the Tenth Circuit Court of Appeals applied FED.R.CRIM.P. 31(d), which contained language virtually identical to Wyoming's rule. In that case, the circuit court held that the trial court did not err by questioning a juror about his verdict when his initial responses to the jury poll were equivocal. 901 F.2d at 878–79. The circuit court stated:

"Where upon a poll one or more jurors express some uncertainty as to the verdict, the trial judge is vested with discretion under F.R.Crim.P., Rule 31(d), to direct the jury to retire for further deliberations or to discharge the jury. Although not expressly so stated in the rule, the power to repoll the jury is also among the judge's discretionary powers. This power is most helpful where, for instance, the jury has been confused by multiple parties or counts.

"In any case upon the appearance of any uncertainty or contingency in a jury's verdict it is the duty of the trial judge to resolve that doubt, for '[t]here is no verdict as long as there is any uncertainty or contingency to the finality of the jury's determination.'"

901 F.2d at 877–78 (quoting United States v. Morris, 612 F.2d 483, 489 (10th Cir.1979)).

■ As in Hernandez–Garcia, no evidence exists in this case which suggests that the trial judge coerced the jurors into accepting the jury's verdict. The record is clear that the trial judge was simply attempting to determine whether the jurors truly disagreed with the jury's verdict or whether they were just confused. In this case, the jurors' answers to the additional questions which were asked by the trial judge made it very clear that they were simply confused. When they were asked to clarify their answers, both

jurors indicated unequivocally that their verdicts conformed to the jury's verdict. The jurors had to make determinations on a number of counts; therefore, it is understandable that they may have been confused. Additionally, none of the jurors responded to the trial judge's questions at the end of the polling. We conclude, therefore, that the trial court did not abuse its discretion when it denied Appellant's motion for a new trial.

## D. Sufficiency of the Evidence on the Sexual Assault Verdicts

Appellant claims that the jury's guilty verdicts on the attempted first-degree sexual assault and attempted second-degree sexual assault charges cannot stand because the evidence presented at the trial established that he renounced his criminal intentions. The jury was instructed on the elements of the attempted sexual assault charges and on the law of renunciation. We, therefore, review Appellant's claim under our well established sufficiency of the evidence standard:

> This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We leave out of consideration entirely the evidence presented by the unsuccessful party which conflicts with the successful party's evidence, and we afford every favorable inference to the successful party's evidence which may be reasonably and fairly drawn from that evidence. We have consistently held that, even though it is possible to draw other inferences from the evidence which has been presented, the jury has the responsibility to resolve conflicts in the evidence. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Bloomquist v. State,* 914 P.2d 812, 823–24 (Wyo.1996) (citations omitted).

Appellant was charged with attempted first-degree sexual assault under WYO. STAT. §§ 6–1–301(a)(i) and 6–2–302(a)(i) (1988). Under those statutes, the State had to prove that Appellant attempted to commit sexual intrusion "through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement." Attempted second-degree sexual assault is defined at §§ 6–1–301(a)(i) and 6–2–303(a)(ii). To obtain a guilty verdict against Appellant on the attempted second-degree sexual assault charge, the State had to prove that Appellant attempted to commit sexual intrusion by any means that would prevent a victim of ordinary resolution from resisting.

WYO. STAT. § 6–1–301(b) (1988) defines the concept of renunciation of criminal intentions:

> (b) A person is not liable under this section if, under circumstances manifesting a voluntary and complete renunciation of his criminal intention, he avoided the commission of the crime attempted by abandoning his criminal effort. Within the meaning of this subsection, renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the person's course of conduct, which increase the probability of detection or apprehension or which make more difficult the accomplishment of the criminal intention.

Although Appellant did not testify at the trial, the statements which he gave to the police were admitted into evidence. In those statements, he admitted that he and the victim drove away from the bar in a pickup. He stated that he and the victim kissed and caressed each other at a train depot and that they then drove to a rural road where they parked. Appellant said that they resumed their kissing and that he attempted to slide his hand down inside of the victim's pants. When she said, "no," Appellant hit her two or three times in the temple area of her head. He told the police that he hit the victim because she would not have sex with him.

Appellant admitted that he pulled the victim's pants off of her and that he climbed on

top of her. The victim resisted by pushing him away with her leg. Appellant stated that he was trying to have sex with the victim even though she had told him "no." After the victim pushed Appellant away, Appellant opened the passenger door and shoved the victim out of the pickup. He stated that he yelled expletives at her and that he then drove away, leaving her lying on the ground where she was crying.

Appellant claims that, when he shoved the victim out of the pickup without again trying to have sex with her, he completely and voluntarily renounced his criminal intentions. It is obvious that the jury disagreed because it found Appellant guilty of the attempted sexual assault charges. We conclude that sufficient evidence supported the jury's decision.

■ Section 6–1–301(b) provides that renunciation is not voluntary when it is motivated by circumstances, not present or apparent at the inception of the defendant's course of conduct, which make the accomplishment of the crime more difficult. In *Haight v. State*, 654 P.2d 1232, 1242 (Wyo. 1982), this Court held that the victim's resistance to the defendant's attempted sexual assault was a circumstance which made the consummation of the crime more difficult. We went on to state that, in light of the victim's resistance, the defendant did not voluntarily and completely renounce his criminal intentions. 654 P.2d at 1242; *see also Cardenas v. State,* 811 P.2d 989, 995–96 (Wyo.1991). As the victims did in *Haight* and *Cardenas,* the victim in this case resisted Appellant's actions. Appellant's renunciation, therefore, was not voluntary and complete because it was motivated by the victim's continuous resistance to his attempts.

Furthermore, this Court has stated that renunciation is not available as a defense when the defendant has injured his victim. *See Ramirez v. State,* 739 P.2d 1214, 1216 (Wyo.1987); *see also Apodaca v. State,* 796 P.2d 806, 808 (Wyo.1990). Appellant admitted that he hit the victim two or three times in the temple area of her head. He claims, however, that he did not injure her. The evidence which was presented at the trial showed that the victim had a number of bruises and abrasions and that she had a broken nose. The trial evidence did not conclusively establish the cause of the victim's injuries; however, the existence of the injuries, together with Appellant's admission that he hit her, was sufficient to negate his renunciation defense. Sufficient evidence, therefore, supported the jury's guilty verdict on the sexual assault charges.

### E. Felony Murder

Appellant contends that the trial court abused its discretion when it denied his motion for a judgment of acquittal on the felony murder count. He argues that he was entitled to be awarded a judgment of acquittal because the victim's death was not a part of the *res gestae* or things done to commit the alleged sexual assault.

■ In reviewing a trial court's denial of a motion for a judgment of acquittal,

we accept as true the evidence of the prosecution, together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict.

"A motion for judgment of acquittal is to be granted only when the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Or, stated another way, if there is substantial evidence to sustain a conviction of the crime, the motion should not be granted. This standard applies whether the supporting evidence is direct or circumstantial." (citations omitted) *Leppek v. State,* 636 P.2d 1117, 1119 (Wyo.1981).

*Apodaca,* 796 P.2d at 807 (a citation omitted). *See also DeVries v. State,* 909 P.2d 977, 978 (Wyo.1996).

■ The relevant language of the felony murder statute, § 6–2–101(a), provides: "Whoever ... in the ... attempt to perpetrate[ ] any sexual assault ... kills any human being is guilty of murder in the first degree." The State is not required to prove that the defendant intended to kill the victim in order for the jury to convict the defendant of felony murder. *Bouwkamp,* 833 P.2d at

491. Instead, a person is punished for committing felony murder if the killing "results during the commission of a felony." *Castle v. State*, 842 P.2d 1060, 1062 (Wyo.1992). The felony murder rule is intended to deter homicides which happen during the perpetration of felonies, including those which result from negligence and accident. *Bouwkamp*, 833 P.2d at 492.

A killing amounts to felony murder when it occurs within the unbroken chain of events which comprise the felony. *Id.* In other words, the homicide and the underlying felony must be part of one continuous transaction. *Id.; see also Jansen v. State*, 892 P.2d 1131, 1134 (Wyo.1995). The jury must decide whether the killing and the felony were committed during the same transaction. *Bouwkamp*, 833 P.2d at 492. The sequence of events is generally unimportant, and a defendant is guilty of felony murder when the killing precedes, coincides with, or follows the commission of the underlying felony. 833 P.2d at 491–92; *see also Hightower v. State*, 901 P.2d 397 (Wyo.1995).

In a case similar to the case at bar, the Minnesota Court of Appeals ruled that sufficient evidence supported the defendant's conviction for felony murder. *State v. French*, 402 N.W.2d 805, 805 (Minn.Ct.App.1987). In *French*, the defendant beat the victim with a sledgehammer and then dragged her body outside. 402 N.W.2d at 806–08. The medical examiner testified that the victim's exposure to the cold temperatures, rather than the injuries she had received from the hammer blows, caused her death. 402 N.W.2d at 807. The court determined that the victim's death was a part of the continuous criminal transaction which involved the assault and that sufficient evidence, therefore, supported the defendant's felony murder conviction. 402 N.W.2d at 808; *see also State v. Rodriguez*, 505 N.W.2d 373 (Minn.Ct.App.1993).

As we explained earlier in this opinion, sufficient evidence supported the guilty verdicts against Appellant on the sexual assault charges. The evidence in this case established that, because Appellant shoved her out of the pickup after she resisted him, the victim died from hypothermia. The temperatures that night ranged between eighteen and thirty-seven degrees Fahrenheit, and the victim was virtually nude. She remained exposed to the elements until her body was discovered the next morning. Given this evidence, it is obvious that the victim's death occurred as a part of a continuous transaction involving the perpetration of the sexual assault. The evidence was, therefore, sufficient to support Appellant's conviction for felony murder, and the trial court did not err when it denied Appellant's motion for a judgment of acquittal.

## F. Right to Testify

Appellant contends that his conviction should be reversed because the trial court failed to advise him on the record of his right to testify and to inquire as to whether he voluntarily waived that right. On appeal, Appellant claims that he wanted to testify and that he would have informed the trial court of his wishes if the trial court had asked.

A criminal defendant has the right to testify in his own defense. *Sanchez v. State*, 841 P.2d 85, 87 (Wyo.1992). This Court has adopted a two-step process for analyzing a claim in which an appellant asserts that he was denied his right to testify. 841 P.2d at 88. In order to prevail on appeal, the appellant must show that he was denied his right to testify and that he would have offered relevant testimony if he had testified. *Id.; Lobatos v. State*, 875 P.2d 716, 724 (Wyo.1994).

We stated in *Sanchez* that our review of a case is aided when the trial court asks the defendant on the record and out of the jury's presence whether he understands and voluntarily waives his right to testify. 841 P.2d at 89. In *Lobatos*, however, we made it clear that questioning the defendant on the record is not mandatory. 875 P.2d at 724. The trial court's failure to inquire as to whether the defendant wants to testify is not a denial of the defendant's right to testify. *Id.* Thus, even if the trial court does not ask the defendant, the defendant still has the obligation on appeal to establish that he was denied his right to testify. *Id.*

██ In this case, the record does not contain any indication, one way or the other, about whether the trial court informed Appellant of his right to testify at the trial or whether it asked him if he wanted to testify. The record is clear, however, that Appellant was informed at his arraignment of his right to testify. Accordingly, Appellant was not completely ignorant of the option. He does not give us any specific explanation of how he was denied his right to testify. He has not, therefore, met his burden of showing that the trial court denied him the right to testify.

██ Appellant asks us to adopt a standard "that when the record is silent on this issue ... it must be presumed that the [a]ppellant wished to testify and that his right to testify was denied." He does not offer authority to support our adoption of this presumption, and we decline to follow his suggestion because such a standard would not be consistent with *Lobatos*. Since we have determined that Appellant was not denied his right to testify, we do not need to determine whether he met his burden of showing that his testimony would have been relevant.

### G. Jury Instructions

Appellant contends that the trial court erred by refusing to give a jury instruction which he had proposed on his theory of the case. The instruction would have instructed the jury that, in order for it to convict Appellant of felony murder, it had to find that the killing was a part of the *res gestae* or things done to commit the sexual assault. The trial court refused to give the instruction, and Appellant objected to the ruling.

██ A trial court has wide latitude in instructing the jury. *Fales v. State*, 908 P.2d 404, 411 (Wyo.1995). We will not find reversible error in the jury instructions as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial. *Id.* With regard to theory-of-the-case instructions, we have stated that a defendant is denied his due process of law right if the trial court fails to give a jury instruction on the defendant's theory of the case when the instruction properly recites Wyoming law and competent evidence has been presented to support the defendant's theory. *Wilkening v. State*, 922 P.2d 1381, 1383 (Wyo.1996). A trial court may refuse to give a correct theory-of-the-case instruction, however, when the principles of the instruction are adequately covered by other instructions. *Id.; Chavez–Becerra v. State*, 924 P.2d 63, 67 (Wyo.1996).

██ The principle of law contained in Appellant's proposed instruction was adequately and properly covered in Instruction No. 8. The jury was informed in that instruction that, in order to find Appellant guilty of felony murder, it had to find that the victim's death resulted from his attempt to perpetrate the sexual assault. This was a correct statement of the law and rendered Appellant's proposed instruction redundant. The trial court did not, therefore, err when it refused to give Appellant's proposed instruction.

### CONCLUSION

The trial court did not commit reversible error in this case, and sufficient evidence supported Appellant's conviction.

Affirmed.