2005 WY 136

**Shenice Gail YOUNG, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 04–187.**

Supreme Court of Wyoming.

Oct. 18, 2005.

Representing Appellant: Ken Koski, State Public Defender, PDP; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶1] Shenice Gail Young appeals from the judgment and sentence entered by the district court after a jury convicted her of one count of aggravated assault and battery and one count of simple battery. Ms. Young's convictions resulted from an altercation involving her former boyfriend and his current girlfriend, ending with Ms. Young biting off a piece of the girlfriend's right ear. On appeal, Ms. Young claims the district court erred by refusing to grant her motion for a continuance in order to consult an audiologist after the girlfriend testified she had suffered hearing loss as a result of the bite. We conclude that the district court did not abuse its discretion by denying Ms. Young's request for a continuance of the trial and, therefore, affirm.

## ISSUE

[¶2] Whether the district court abused its discretion when it denied appellant's motion for a continuance.

## FACTS

[¶3] Ms. Young was romantically involved with James Stevenson for approximately nine years, and they had a daughter (the child) together. Ms. Young and Mr. Stevenson ended their relationship, but they continued to cooperate with regard to visitation and custody of the child. However, when Mr. Stevenson starting dating Shanie Devoe, Ms. Young objected to any contact between Ms. Devoe and the child.

[¶4] On August 21, 2003, Mr. Stevenson picked the child up from daycare and took her to his home. Mr. Stevenson planned to deliver the child to Ms. Young at 8:00 p.m., after which he and Ms. Devoe intended to meet at his house to watch movies. Ms. Young was not home when Mr. Stevenson attempted to leave the child; consequently, he and the child returned to his home and he contacted Ms. Devoe and asked her to come to his house. At approximately 10:00 p.m., Mr. Stevenson put the child to bed.

[¶5] Ms. Young called a short time later to tell Mr. Stevenson she was on her way to pick up the child, but he told her the child

was in bed and she should just let her spend the night. Ms. Young insisted on picking the child up that evening, so Mr. Stevenson retrieved the child from her bed and met Ms. Young at the door. Ms. Young took the child, and Ms. Young and Mr. Stevenson quarreled. The encounter turned physical, causing Ms. Young to drop the child. During the ensuing struggle between Ms. Young and Mr. Stevenson, she kicked him, attempted to bite his hand, and violently squeezed his right testicle. A man who was staying with Mr. Stevenson (the house guest) broke up the altercation and took Ms. Young to her car. The house guest left Ms. Young in the car and went back into the house to get the child.

[¶ 6] During the quarrel between Mr. Stevenson and Ms. Young, Ms. Devoe went into the garage. Ms. Young was tired of waiting in the car for the house guest to return with the child and re-entered the residence through the garage, where she encountered Ms. Devoe. Ms. Young attacked Ms. Devoe and ultimately bit her right ear, detaching a large piece from the exterior portion of the ear. Mr. Stevenson intervened and broke up the fight. He took Ms. Devoe to the emergency room in Casper, and she was later transferred to Northern Colorado Medical Center in Greeley, Colorado, where a medical team attempted to reattach the missing portion of her ear. Unfortunately, some of the reattached portion of the ear became necrotic and it had to be surgically removed.

[¶ 7] The State charged Ms. Young with one count of aggravated assault and battery, in violation of Wyo. Stat. Ann. § 6–2–502(a)(i) (LexisNexis 2005), for her assault upon Ms. Devoe; one count of simple assault and battery, in violation of Wyo. Stat. Ann. § 6–2–501(b) and (d) (LexisNexis 2005), for her assault upon Mr. Stevenson; and one count of illegally entering Mr. Stevenson's home, in violation of Wyo. Stat. Ann. § 6–3–302 (LexisNexis 2005). The State dismissed the illegal entry count, and the parties proceeded to trial on the battery charges. Ms. Devoe testified at the trial that she had suffered some loss of hearing as a result of the injury to her ear. Claiming surprise at this testi-

mony, defense counsel requested a continuance of the trial in order to consult with an audiologist. The district court denied Ms. Young's motion for a continuance.

[¶ 8] At the conclusion of the trial, the jury returned guilty verdicts on both counts. The district court denied Ms. Young's motion for a new trial and sentenced her to serve prison terms of 12 to 30 months on the aggravated assault and battery count and two months on the simple assault and battery count, but ordered the sentences to run concurrently.

## STANDARD OF REVIEW

[¶ 9] A party may request a continuance of the trial proceedings if it is surprised by evidence presented at the trial or the opposing party does not comply with its discovery obligations. See W.R.Cr.P. 16(d)(2); *Capshaw v. State*, 714 P.2d 349, 352 (Wyo.1986); *Siegert v. State*, 634 P.2d 323, 325–26 (Wyo.1981). "This Court has consistently held that the granting of a motion for continuance is within the discretion of the trial court. The standard of review, therefore, is limited to determining whether the trial court abused its discretion by denying the continuance." *BSC v. Natrona County Department of Family Services (In the Interest of CC)*, 2004 WY 167, ¶ 23, 102 P.3d 890, 897 (Wyo.2004) quoting *Roose v. State*, 753 P.2d 574, 578 (Wyo.1988), which quoted *Gentry v. State*, 724 P.2d 450, 451 (Wyo. 1986). An abuse of discretion occurs when a district court

"[a]cts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances."

*Berry v. State*, 2004 WY 81, ¶ 43, 93 P.3d 222, 235 (Wyo.2004), quoting *Sampsell v. State*, 2001 WY 12, ¶ 6, 17 P.3d 724, 726 (Wyo.2001) (citations and emphasis omitted). The determination of whether the district court abused its discretion in refusing to grant a continuance depends upon the facts and circum-

stances of the individual case. *Sincock v. State*, 2003 WY 115, ¶ 25, 76 P.3d 323, 333–34 (Wyo.2003); *Clearwater v. State*, 2 P.3d 548, 553 (Wyo.2000).

## DISCUSSION

■ [¶ 10]   The State charged Ms. Young with aggravated assault and battery, in violation of § 6–2–502, for biting off a piece of Ms. Devoe's ear.   That statute states, in relevant part:

(a) A person is guilty of aggravated assault and battery if he:

(i) Causes serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

Section 6–2–502(a)(i).   "Serious bodily injury" is defined at Wyo. Stat. Ann. § 6–1–104(a)(x) (LexisNexis 2005) as "bodily injury which creates a substantial risk of death or which causes miscarriage, severe disfigurement or protracted loss or impairment of the function of any bodily member or organ[.]"

[¶ 11]   At the trial on March 22, 2004, Ms. Devoe testified:

[Prosecutor]: All right.   And are you able to—do you notice any hearing differences between the ear that was bitten off and the ear that is intact?

[Ms. Devoe]: Yes.

Q.   What do you notice?

A.   I notice if there's like a lot of sound on one side—or if somebody is talking to me, I just will give this ear a little bit forward if I don't understand them just because the whole function of this ear is actually muffle the ear—I didn't know that until this happened—but it's to actually kind of, like funnel it back into the ear and so—

[Objection]

Q.   Do you notice any difficulty in hearing out of that ear as compared to the ear that's intact?

A.   Yes, I do.

Q.   Okay. And you were describing how when there's a lot of noise that you can—you use your good ear to hear?

A.   Yes, I will—yeah.   I can hear better out of this one.   And, say, when I'm on the phone, I usually talk on this one.   But I, you know, I've tried to talk through this one on the phone; but it's just—I can't—I can never understand the full conversation, so I always have to switch back to the other ear.

Q.   So you find it more difficult to hear different sounds or exactly what's being said with the—

A.   Yeah.

Q.   With the ear that's missing as compared to the ear that's whole?

A.   Yes.

Q.   And has that been something you've experienced the entire time?

A.   Yes.

[¶ 12]   Later in the trial, Sanjay Gupta, M.D., an otolaryngologist,[1] testified about Ms. Devoe's injury.   Dr. Gupta was the Colorado physician who reattached Ms. Devoe's ear and then later surgically removed the necrotic portion.   One of his areas of expertise is audiology, which he described as "the effects of hearing and changes of hearing in children and adults."   He testified he had conducted a hearing test on Ms. Devoe and found, when sound was introduced into her ear canal, her hearing was normal. Dr. Gupta explained, however, that hearing involves a complex sequence of events.   The outer portion of the ear actually acts as a funnel to collect sound, and when it is missing, the function is compromised.   He confirmed, because Ms. Devoe was missing a portion of her outer ear, she could have difficulty hearing in a crowded situation or in circumstances where there is background noise.

[¶ 13]   The day after Ms. Devoe's testimony, the defense filed a motion to continue the trial.   The motion stated that, in light of Ms. Devoe's testimony, it was clear the State intended to establish Ms. Devoe had suffered

---

1.   According to Dr. Gupta, an otolaryngologist is a specialist for treatment of ear, nose and throat problems in both adults and children.

serious bodily injury by showing impairment of the function of a bodily organ. She claimed "none of the police reports nor any of the medical records supplied to the defense during discovery, make any mention of hearing loss and the defense was completely unaware prior to Ms. Devoe's testimony such a claim might be raised." The defense asserted, therefore, it needed a continuance in order "to consult with an audiologist to determine if the injury to Ms. Devoe could possibly cause such a loss and if appropriate, present testimony on this issue."

[¶ 14] The district court heard arguments on the motion for a continuance prior to the start of trial proceedings on March 23, 2004. The State responded to Ms. Young's request for a continuance by noting it is a matter of basic understanding that loss of outer ear tissue may affect hearing. The district court denied Ms. Young's request for a continuance, and the trial continued. After the jury returned its verdict, Ms. Young filed a motion for a new trial, alleging, among other things, the district court erred by refusing her request for a continuance. The district court denied that motion, as well.

[¶ 15] On appeal, Ms. Young claims she was surprised by the State's attempt to prove the serious bodily injury element of the crime by showing Ms. Devoe's hearing was impaired. Because neither the police reports nor the medical records stated Ms. Devoe's ability to hear was compromised, she contends she could not have foreseen a need to defend against a showing of impairment of a bodily organ. Prior to Ms. Devoe's trial testimony, Ms. Young believed the State was going to attempt to prove serious bodily injury simply by showing severe disfigurement of the ear. Her defense, therefore, was the ear was not severely disfigured.

[¶ 16] The record indicates the defense could have foreseen the State would attempt to prove serious bodily injury by showing Ms. Devoe's hearing was impaired. Although the information was amended twice during the pendency of the action, the charging documents consistently stated Ms. Young was alleged to have caused serious bodily injury to Ms. Devoe. The documents did not indicate the prosecution was limiting its theo-

ry of the case to a showing of severe disfigurement. Thus, this is not a case where the evidence presented at trial was different from the crime charged. Compare, *Estrada–Sanchez v. State,* 2003 WY 45, 66 P.3d 703 (Wyo.2003) (holding a prejudicial variance requiring reversal of the defendant's conviction occurred when the evidence presented at trial established facts different from those alleged in the charging document). If Ms. Young was confused about the State's theory of the case, she could have filed a motion for a bill of particulars, asking for further explanation of the basis for the charge. See e.g., *Black v. State,* 2002 WY 72, ¶¶ 32–33, 46 P.3d 298, 304 (Wyo.2002). She did not, however, request a bill of particulars.

[¶ 17] The State did not commit any discovery violations. The defense had been provided all of the relevant medical records, and, consequently, should have been aware she was treated by an otolaryngologist, who specialized in problems with the ear. As recognized by the district court, it is a matter of common knowledge that the outer portion of the ear has a function in hearing. Furthermore, at a combined motion hearing and pretrial conference, which was held two weeks before the start of the trial, the State made the following comments with regard to the serious bodily injury element of the crime:

> Obviously, Your Honor, the State has an element to prove that what we have here is either severe disfigurement or protracted loss or impairment of a bodily function or organ.
> * * *
> Obviously, there's going to be some ongoing medical care. And the definition of severe disfigurement in and of itself infers something that might be continuous or permanent as well as the definition of protracted loss or impairment of a bodily member or organ, protracted meaning ongoing or continuous or permanent.

Thus, Ms. Young's claim she was unfairly surprised by or could not have foreseen the testimony about Ms. Devoe's hearing loss is not supported by the record.

[¶ 18] Furthermore, Ms. Young does not explain how she was prejudiced by the dis-

trict court's refusal to grant a continuance. The defense was allowed ample opportunity to cross examine Ms. Devoe and Dr. Gupta. Although her defense was not ultimately successful, Ms. Young effectively established, through cross-examination, that Ms. Devoe could hear normally when sound was directed into her ear canal, Dr. Gupta did not perform a field test to determine the effect upon Ms. Devoe's hearing from the loss of external ear tissue, and Dr. Gupta's records did not document Ms. Devoe's hearing complaints or his belief that she had suffered hearing loss. The jury was, therefore, left to determine whether the State had met its burden of proof on the "serious bodily injury" element by weighing the evidence and determining the credibility of the witnesses.

[¶ 19] Additionally, at the hearing on the motion for a new trial, Ms. Young did not present any new evidence or an offer of proof to counter Ms. Devoe's or Dr. Gupta's testimony indicating she suffered hearing loss as a result of the bite. See generally, *Cardenas v. State*, 811 P.2d 989, 994 (Wyo.1991) (noting the "[a]ppellant failed to specify material evidence which he could have provided if the district court had granted his motion for a continuance"). We conclude, therefore, the district court did not abuse its discretion by denying Ms. Young's request for a continuance.

[¶ 20] Affirmed.