KITE, Justice.
 

 [¶ 1] James Barker was convicted after a bench trial of one count of larceny by bailee for converting items belonging to his employer, Computer Professionals Unlimited (CPU), to his own use. He appealed his conviction, and we issued a limited remand for an evi-dentiary hearing on his ineffective assistance of counsel claim. Back in this Court after the remand, we concluded the district court “unduly limited the evidence Barker was allowed to present at the remand hearing.”
 
 Barker v. State,
 
 2005 WY 20, ¶ 1, 106 P.3d 297, 298 (Wyo.2005). Consequently, we reversed the district court’s determination defense counsel was effective and again remanded the case “for the limited purpose of allowing Barker to fully develop the record on the issues of pretrial investigation and the circumstances surrounding Barker’s waiver of his right to testify at his criminal trial.”
 
 Id.
 
 Following the second remand hearing, we requested supplemental briefing from the parties. We now consider the case on the merits and affirm Mr. Barker’s conviction concluding he was not denied his right to testify, had adequate notice of the charges for which he was convicted, was not prejudiced by the admission of evidence of a burglary at CPU’s warehouse, and received effective assistance of counsel.
 

 ISSUES
 

 [¶ 2] Mr. Barker presents the following issues on appeal:
 

 
 *110
 

 ISSUE I
 

 Was Mr. Barker denied his right to testify when the judge declined to allow a continuance and refused defense counsels’ request to re-open the bench trial, so that Mr. Barker could testify unimpaired by illness?
 

 ISSUE II
 

 Was Mr. Barker denied his constitutional right to proper notice which prevented him from effectively defending against the charges?
 

 ISSUE III
 

 Was Mr. Barker prejudiced when the prosecution presented evidence of uncharged misconduct that was irrelevant to the charged offenses and should not have been admissible under W.R.E. 404(b)?
 

 ISSUE IV
 

 Was Mr. Barker denied his constitutional right to effective assistance of trial counsel; in the alternative, was Mr. Barker deprived of the opportunity to fully develop the record for review of his ineffectiveness claim?
 

 The State rephrases the issues as:
 

 I. Was appellant denied a continuance or his right to testify, and did the district court abuse its discretion by denying his request for a new trial to permit him to testify?
 

 II. Did appellant receive adequate notice of the charges against him?
 

 III. Did the State present evidence of appellant’s uncharged misconduct?
 

 IV. Did appellant receive effective assistance of counsel?
 

 FACTS
 

 [¶ 3] In January 2001, Mr. Barker began working as a network engineer for CPU in Casper.
 
 [1]
 
 CPU sold computer equipment and provided computer services to customers located throughout the state. Russell Wood was CPU’s managing partner. CPU stored equipment in a warehouse, and Mark Adams was the warehouse manager.
 

 [¶ 4] A large part of Mr. Barker’s job involved traveling to customers’ places of business and setting up and installing computer systems and equipment. In order to accomplish this, equipment had to be ordered for the job or taken from CPU’s equipment stock in the warehouse. There were apparently different ways for CPU employees to account for equipment taken from the warehouse for a job. Using CPU’s computerized accounting program, they could invoice the equipment to the customer as they took it out of the warehouse or they could keep track of the equipment on a work order and invoice it after the job was complete. If an employee simply wanted to use equipment for a period of time, he could enter it into the company’s computerized accounting program or sign out the equipment using the company’s “loan book” for larger items or “cabinet sheet” for smaller items which were kept in a locked cabinet. Occasionally, the company ordered equipment and had it “drop-shipped” directly to the customer. During Mr. Barker’s tenure with CPU, various items of equipment disappeared. CPU reported some of the missing items to the police and filed a claim with its insurance company.
 

 [¶ 5] Mr. Barker resigned from his employment with CPU in December 2001. At the time of his resignation, CPU’s records indicated he possessed some of its property, either because he intended to purchase the items but had not yet paid for them or he had borrowed them from CPU. CPU obtained a writ of replevin to retrieve items belonging to the company located at Mr. Barker’s residence. Mr. Wood and Mr. Adams accompanied the sheriffs deputies to Mr. Barker’s residence to execute the writ, and they recognized items belonging to CPU but not included in CPU’s sales or loan records. They also recognized some items they had previously reported to the police as stolen. The police obtained a warrant to search Mr. Barker’s residence and recovered a number of items CPU claimed were stolen.
 

 
 *111
 
 [¶ 6] Mr. Barker was charged with one count of larceny by bailee, in violation of Wyo. Stat. Ann. § 6-3-402(b) (LexisNexis 2001),
 
 [2]
 
 and one count of concealing stolen property, in violation of Wyo. Stat. Ann. § 6-3-403(a)(i) (LexisNexis 2001).
 
 [3]
 
 Mr. Barker’s defense was he lawfully possessed the property. According to Mr. Barker, he planned to refute the charges by testifying in his own defense and presenting documentary evidence, including e-mails between himself and Mr. Wood, to show he lawfully had possession of the equipment. In an effort to obtain documentary evidence to support his defense, trial counsel served the State with a demand for discovery and CPU with a subpoena duces tecum. The State filed a motion to quash the subpoena, but the district court denied the motion because the State did not have standing to contest a subpoena served on CPU. Defense counsel subsequently filed a motion to compel the production of the requested information, but the motion was never heard nor ruled upon by the district court.
 

 [¶ 7] Mr. Barker waived his right to a jury trial, and the district court conducted a bench trial beginning on November 12, 2002. The State presented evidence concerning numerous items it alleged Mr. Barker had converted to his own use, including some items CPU had provided to the Arapahoe school in Fremont County. Mr. Barker had traveled to the Arapahoe school to work on its computer system and was supposed to return the items to CPU because the school district did not need or want them. The items were not returned to CPU and were later found at Mr. Barker’s residence. The items were received into evidence as Exhibit Nos. 1 through 4 at trial.
 

 [¶ 8] After the State rested, the district court granted Mr. Barker’s motion for a judgment of acquittal on Count II, concealment of stolen property. The trial continued on Count I, larceny by bailee. The district court advised Mr. Barker of his right to testify at the trial, which he waived. At the conclusion of the trial, the district court ruled Mr. Barker was guilty of larceny by bailee for the Arapahoe school items. As to the remainder of the items the State claimed Mr. Barker had converted while acting as a bail-ee, the district court ruled the State failed to prove they were entrusted to him.
 

 [¶ 9] Mr. Barker filed a motion for a new trial and renewed his motion for judgment of acquittal on Count I. Although the motion for a new trial set out a different basis, Mr. Barker asked the district court at the hearing to reopen the evidence to allow him to testify. He claimed he was suffering from a “diabetic episode” on the last day of the trial when he would have testified and the court should reopen the evidence to allow him to testify. The State was surprised by Mr. Barker’s argument and the district court continued the hearing to allow the State an opportunity to respond. After the rescheduled hearing, the district court denied Mr. Barker’s motions, specifically finding he knowingly, voluntarily and intelligently waived his right to testify at the trial. Mr. Barker then filed a notice of appeal.
 

 [¶ 10] While the appeal was pending, Mr. Barker filed a motion in this Court requesting a limited remand to the district court for an evidentiary hearing concerning the effectiveness of his trial counsel. We granted a limited remand, and the district court held a hearing on February 6, 2004. The district court limited the scope of the remand hearing and, at the conclusion of the hearing,
 
 *112
 
 determined Mr. Barker had not proven his trial counsel was ineffective.
 
 Barker,
 
 ¶8, 106 P.3d at 299.
 

 [¶ 11] After the remand hearing, the case was returned to this Court and the parties filed their initial briefs. Mr. Barker argued the district court improperly refused to allow him to inquire at the remand hearing about his trial attorneys’ actions with regard to his waiver of the right to testify. In addition, he claimed the district court erred by constraining him from conducting full discovery to support his claims of ineffective assistance of counsel. We concluded the district court improperly limited the scope of the remand hearing.
 
 Barker,
 
 ¶20, 106 P.3d at 302. Thus, we remanded the case to allow Mr. Barker to fully develop the record on his ineffective assistance of counsel claim.
 
 Barker,
 
 ¶ 1, 106 P.3d at 298. After the second evidentiary hearing, the district court ruled Mr. Barker’s counsel’s performance was not deficient and Mr. Barker had not shown he was prejudiced. The ease returned to this Court, and we ordered the parties to submit supplemental briefing on the ineffective assistance of counsel claim.
 

 STANDARDS OF REVIEW
 

 A.Right to Testify ¡New Trial
 

 [¶ 12] Wyoming Rule of Criminal Procedure 33 governs motions for a new trial in criminal cases. The rule specifically addresses bench trials, stating in pertinent part:
 

 (a)
 
 In General.
 
 — The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice. If trial was by the court without a jury, the court, on motion of a defendant for a new trial, may vacate the judgment if entered, take additional testimony, and direct the entry of a new judgment.
 

 Generally, a district court’s decision regarding a motion for a new trial is reviewed for an abuse of discretion.
 
 See, e.g., Davis v. State,
 
 2005 WY 93, ¶ 44, 117 P.3d 454, 470-71 (Wyo.2005);
 
 Robinson v. State,
 
 2003 WY 32, ¶ 18, 64 P.3d 743, 748 (Wyo.2003).
 

 [¶ 13] In this case, Mr. Barker’s motion for a new trial or to reopen the evidence in
 

 his bench trial was based upon an alleged violation of his constitutional right to testify. We described the standard of review for a claim of denial of a criminal defendant’s right to testify in
 
 Burgos-Seberos v. State,
 
 969 P.2d 1131, 1135 (Wyo.1998):
 

 In order to succeed on appeal, an appellant must initially demonstrate that “he was denied his right to testify and that he would have offered relevant testimony if he had testified.”
 
 Harris [v. State],
 
 933 P.2d [1114] at 1125 [(Wyo.1997)].
 
 See also Sanchez v. State,
 
 841 P.2d 85, 88 (Wyo.1992). If an appellant satisfies his initial burden, the state has the responsibility to show that the denial of the appellant’s right to testify was harmless error beyond a reasonable doubt.
 
 Sanchez,
 
 841 P.2d at 88.
 

 B. Notice of Charges
 

 [¶ 14] An accused has a constitutional right to notice of the charges against him to allow him a fair opportunity to defend against the charges. United States Constitution, Sixth Amendment; Wyo. Const, art. 1 § 10.
 
 See also,
 
 W.R.Cr.P. 3;
 
 Derksen v. State,
 
 845 P.2d 1383, 1388-89 (Wyo.1993). Because the right to notice of criminal charges is of constitutional magnitude and the determination on the adequacy of the notice is a question of law, we review the issue
 
 de novo. See, e.g., Pena v. State,
 
 2004 WY 115, ¶ 7, 98 P.3d 857, 862(Wyo.2004).
 

 C. Other Misconduct Evidence Under W.R.E. 404(b)
 

 [¶ 15] When a criminal defendant has filed a demand for notice of other bad acts evidence the State intends to introduce at trial, we consider an objection to any such evidence to have been made. Thus, we review a district court’s decision on the admissibility of other bad acts evidence under the abuse of discretion standard.
 
 Bhutto v. State,
 
 2005 WY 78, ¶ 19, 114 P.3d 1252, 1262 (Wyo.2005).
 

 D. Ineffective Assistance of Counsel
 

 [¶ 16] We articulated our standard for reviewing a district court’s determination on a
 
 *113
 
 defendant’s claim of ineffective assistance of counsel in
 
 Robinson,
 
 ¶ 14, 64 P.3d at 747:
 

 Where the trial court has heard and decided [a claim of ineffective assistance of counsel], we will not disturb that court’s findings of fact unless they are clearly erroneous or against the great weight of the evidence. We will, on the other hand, conduct a de novo review of the trial court’s conclusions of law, which include the question of whether counsel’s conduct was deficient and the question of whether the appellant was prejudiced by that deficient conduct.
 

 In applying this standard of review, we must also keep in mind:
 

 [T]he paramount determination is whether, in light of all the circumstances, trial counsel’s acts or omissions were outside the wide range of professionally competent assistance. The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment.
 

 Jackson v. State,
 
 902 P.2d 1292, 1295 (Wyo.1995) (citations omitted).
 
 See also, Blakeman v. State,
 
 2004 WY 139, ¶ 29, 100 P.3d 1229, 1237.
 

 DISCUSSION
 

 A. Right to Testify/New Trial
 

 [¶ 17] Mr. Barker argues he was denied his constitutional right to testify at trial. He claims he chose a bench trial rather than a jury trial so he could testify without fear a jury would improperly use his criminal history to convict him. Mr. Barker asserts he was unable to testify as planned on the last day of trial because he was suffering ill effects from his diabetic condition.
 

 [¶ 18] At the evidentiary hearing on his ineffective assistance of counsel claim, Mr. Barker testified normal blood sugar readings are between 50 and 100, and his blood sugar on the morning of the last day of trial was around 300. He took medication and ate in an attempt to correct his blood sugar levels. Mr. Barker told his attorneys about the problem with his blood sugar and, prior to the lunch recess on the last day of trial, defense counsel informed the court about the problem in an off-the-record conference. The district court responded that, if they planned to seek a continuance, they should present some medical evidence of Mr. Barker’s condition. Although there is some discrepancy between what defense counsel and Mr. Barker remember about their conversation following the off-the-record discussion with the district court, they all agree they discussed the possibility of him seeking medical attention for his diabetic condition. Mr. Barker did not seek medical attention but, instead, went home, ate lunch and took additional medication to control his blood sugar. He testified his blood sugar level was a little over 250 just prior to lunch.
 

 [¶ 19] After the lunch recess, defense counsel and Mr. Barker discussed whether he would testify in his own defense and he decided against it. Counsel informed the district court of Mr. Barker’s decision, and the district court engaged in the following colloquy with him:
 

 THE COURT: Mr. Barker, I have been advised, and you just heard your attorney, that you don’t wish to testify. Is that what you also understood?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: Now, I have an obligation to advise you of certain rights. I am going to do that at this time, and I’ll also give you a few minutes additional if you need to consider this decision.
 

 Now, you have the right to testify if you wish to do so.
 

 Do you understand that?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: If you do not testify and, in fact, the defense rests, that means the window is closed; and you don’t have any further opportunity to come back and testify in front of me.
 

 Do you understand what I’m saying?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: The decision as to whether you testify or not is yours and yours alone. You obviously may and, in fact, should consult your attorneys. You can obtain advice from them. You can discuss the matter with them as to the
 
 *114
 
 advantages and disadvantages, but the final decision is yours and yours alone.
 

 Do you understand that?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: If you decide not to testify, I will not and I am precluded from assuming that you are guilty because you chose to remain silent. You have the right to remain silent. That is an absolute right. That is a right that I take seriously, and it will not have any consideration in my ultimate decision on this.
 

 Do you understand that?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: You should also understand that if you chose to testify — or if you choose to testify, then you become like any other witness. You testify under oath, and you’re subject to cross-examination by [the prosecutor].
 

 Do you understand that?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: Is it still your decision not to testify?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: Are you making that decision voluntarily and of your own free will?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: And you consulted with your attorneys before you made that decision?
 

 THE DEFENDANT: Yes, sir.
 

 THE COURT: Have they in any way restricted or controlled your decision as to whether you testify or not?
 

 THE DEFENDANT: No, sir.
 

 THE COURT: All right.
 

 I find that Mr. Barker has been fully advised of his rights, and he chooses not to testify; and that is a decision which is his to make, and he’s made it appropriately.
 

 Defense has nothing further then?
 

 [DEFENSE COUNSEL]: No, sir. Thank you.
 

 At the conclusion of the trial, the district court found Mr. Barker guilty of Count I, larceny by bailee.
 

 [¶ 20] Pursuant to W.R.Cr.P. 33, Mr. Barker requested the district court reopen the evidence to hear his testimony. He claimed he was unable to testify on the last day of trial because he felt tired, confused and achy as a result of his high blood sugar level. Mr. Barker presented the testimony of two medical witnesses in support of his request. A nurse who worked at the Natro-na County Detention Center testified Mr. Barker’s blood sugar was tested when he was remanded to jail after the trial. His blood sugar level was 195 at that time. A physician, who had never examined Mr. Barker, testified in general about diabetes. The doctor testified the goal for treating diabetes is to get blood sugar levels between 50 and 150. He testified a blood sugar reading of 195 is high, but it generally would not cause confusion.
 

 [¶ 21] The evidence presented at the hearing did not convince the district court Mr. Barker was impaired when he relinquished his right to testify. The district judge recalled the waiver proceeding and stated Mr. Barker had answered his questions appropriately and clearly and had maintained eye contact during their discussion about his right to testify in his own defense. The district court denied the motion to reopen the evidence, finding Mr. Barker intelligently, knowingly, and voluntarily waived his right to testify.
 

 [¶ 22] We discussed the analysis applicable to a criminal defendant’s claim that his right to testify was violated in
 
 Burgos-Seberos,
 
 969 P.2d at 1135:
 

 The United States Constitution guarantees a criminal defendant the right to testify in his own defense.
 
 Herdt v. State,
 
 891 P.2d 793, 797 (Wyo.1995);
 
 Harris v. State,
 
 933 P.2d 1114, 1125 (Wyo.1997). The right to testify is a fundamental right, and it is grounded in the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment’s privilege against self-incrimination.
 
 Herdt,
 
 891 P.2d at 797;
 
 Rock v. Arkansas,
 
 483 U.S. 44, 50-51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).
 

 In order to succeed on appeal, an appellant must initially demonstrate that “he
 
 *115
 
 was denied his right to testify and that he would have offered relevant testimony if he had testified.” Harris, 983 P.2d at 1125.
 
 See also Sanchez v. State,
 
 841 P.2d 85, 88 (Wyo.1992). If an appellant satisfies his initial burden, the state has the responsibility to show that the denial of the appellant’s right to testily was harmless error beyond a reasonable doubt.
 
 Sanchez,
 
 841 P.2d at 88.
 

 [¶ 23] In
 
 Sanchez,
 
 defense counsel refused to let the defendant testify in his own defense at trial. On appeal, we explained in order to ensure a defendant’s waiver of his right to testify is valid, the district court should conduct an “on-the-record inquiry after the close of the defendant’s ease, although out of the jury’s hearing, into whether a non[-]testifying defendant understands and voluntarily waives his right.”
 
 Sanchez,
 
 841 P.2d at 89. Here, the trial judge conducted the requisite inquiry to determine whether Mr. Barker voluntarily waived his right to testify in his own defense. Thus, our analysis focuses on whether Mr. Barker’s waiver of his right to testify was made knowingly and intelligently. In making that determination, we consider whether the defendant understood the right to testify and the consequences of waiving the right.
 
 Burgos-Seberos,
 
 969 P.2d at 1135-36;
 
 Herdt,
 
 891 P.2d at 797-98.
 

 [¶ 24] Mr. Barker claims his waiver was not knowing or voluntary because he was impaired by his diabetic condition. However, as the district court noted when it denied his motion to reopen the evidence, the record indicates Mr. Barker understood the nature of his right to testify and the consequences of waiving it. He answered each of the judge’s questions appropriately and coherently. Although his answers were concise, amounting to “Yes, sir” or “No, sir,” there was no indication he did not follow or comprehend the discussion with the court. The district judge noted he had a good memory of the trial because it was one of the few criminal trials he had presided over as fact finder. The judge observed Mr. Barker was articulate, maintained good eye contact, and showed no signs of a lack of comprehension.
 

 [¶ 25] In addition, the medical evidence Mr. Barker offered did not establish he was so impaired by his diabetes he could not understand the nature of his right to testify or the consequences of waiving that right. The doctor testified a blood sugar level of 195, as recorded at the jail when he was taken into custody, generally would not result in confusion. The medical evidence was consistent with defense counsels’ testimony that they had not observed any behavior or symptoms suggesting Mr. Barker was impaired by his diabetic condition. Furthermore, they testified he actively participated in his defense during the trial. Despite Mr. Barker’s testimony his blood sugar levels were higher than normal, the objective evidence presented to the district court did not establish his elevated blood sugar resulted in impairment to the extent he was incapable of waiving his right to testify.
 
 See Jansen v. State,
 
 892 P.2d 1131, 1140 (Wyo.1995) (holding, even though the defendant claimed he was impaired by his diabetes, his confession was voluntary because there was no objective evidence of distress associated with his condition).
 

 [¶ 26] Mr. Barker argues, but for his diabetic symptoms, he would have testified, and his testimony was crucial to his defense. In fact, he claims the primary reason he decided to be tried by the court instead of by a jury was so he could testify without fear of reprisal for his criminal record. Defense counsel stated, however, other factors were considered in making the decision to waive a jury trial:
 

 [Defense counsel]: ... And with the issue on intent to deprive, which is a legal issue, I thought that the judge would be better versed in looking at that as a legal matter instead of a jury just saying, well, he had the stuff; he must have intended to steal it.
 

 I also thought, because of the replevin issue, that they had taken the items on replevin, I might be able to convince the judge that all that stuff was civil in nature, that sort of items, with Judge Park’s experience. And then, of course, you add into the mix Mr. Barker’s extensive criminal history. I believe that when Mr. Barker
 
 *116
 
 brought that up, that that was an appropriate way to handle the case.
 

 [Prosecutor]: And he agreed with that?
 

 [Defense counsel]: He did. I wouldn’t ever waive a jury trial without his consent.
 

 [¶ 27] Mr. Barker’s claim he decided before trial to definitely testify also is thrown into doubt by the record. At the beginning of the trial, the court and counsel discussed the admissibility of Mr. Barker’s criminal history.' The prosecution inquired about the extent to which it could ask Mr. Barker about the specifics of his prior crimes. Defense counsel indicated the discussion was relevant only “should he decide to testify” and the prosecution agreed. Thus, it does not appear the question of whether Mr. Barker would testify was decided before trial. Furthermore, after thé State rested, Mr. Barker’s attorneys had different opinions about whether or not he should testify. Their opinions were based upon the prosecution’s evidence rather than the effect of his diabetic condition on his ability to testify. One attorney felt Mr. Barker could explain some of the evidence if he testified and the other felt the State had not met its burden, making it unnecessary for him to testify.
 

 [¶ 28] On this record, we agree with the district court’s conclusion that Mr. Barker’s right to testify was not denied. He voluntarily, knowingly and intelligently waived that right after consideration of a number of factors and discussion with counsel and the district court. Thus, we do not need to determine whether Mr. Barker’s testimony was relevant or whether the denial of his right to testify was harmless error beyond a reasonable doubt.
 
 Burgos-Seberos,
 
 969 P.2d at 1135;
 
 Sanchez,
 
 841 P.2d at 88. Since his right to testify was not -violated, the district court did not abuse its discretion by denying Mr. Barker’s motion for a new trial or to reopen the evidence.
 

 B. Notice of Charges
 

 [¶ 29] Mr. Barker claims his constitutional rights were violated because he did not receive adequate notice of the charges against him.
 

 The United States Constitution and the Wyoming Constitution both assure the right of a defendant to adequate notice of the accusations against him or her so that a defense may be prepared.
 
 McInturff v. State,
 
 808 P.2d 190, 193 (Wyo.1991);
 
 Gonzales v. State,
 
 551 P.2d 929, 930 (Wyo.1976). Under the notice provision of Wyo. Const, art. 1 § 10, a basic rule that the proof must correspond with the allegation means that a prosecution is not sustained by evidence which tends to prove a different offense than the one charged.
 
 Brantley v. State,
 
 9 Wyo. 102, 106, 61 P. 139 (1900).
 

 Derksen,
 
 845 P.2d 1383, 1388-89 (Wyo.1993). The right to adequate notice is also included in W.R.Cr.P. 3,, which requires a criminal information to include: “a plain, concise and definite written statement of the essential facts constituting the offense charged.”
 

 [¶ 30] Mr. Barker was charged with two counts:
 

 COUNT I
 

 That [Mr. Barker] ... on or about the 1st day of July, 2001, to on or about the 31st day of December, 2001, in the County of Natrona, in the State of Wyoming, did unlawfully and pursuant to a common scheme or plan as a person trusted with the control, care, or custody of any money or other property did with the intent to steal or deprive the owner of the property, convert said property to his own or another’s use, the -value of said property being valued in excess of five hundred dollars ($500), to-wit: computer -equipment belonging to- CPU Connecting Point, in violation of W.S.1977, as amended, § 6-3-402[.]
 

 COUNT II
 

 That [Mr. Barker] ... on or about the 1st day of July, 2001, to on or about the 31st day of December, 2001, in the County of Natrona, in the State of Wyoming, did unlawfully and pursuant to a common scheme or plan buy, receive, conceal, or dispose of property which he knew or had reasonable cause to believe was obtained in violation of the law, namely: property belonging to CPU Connecting Point, the val
 
 *117
 
 ue of said property exceeding five hundred ($500), in violation of W.S.1977, as amended § 6-3-403(a)(i) contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming.
 

 [¶ 31] The district court granted Mr. Barker’s motion for judgment of acquittal on Count II. Addressing Count I, the court stated in its oral ruling the State proved the elements of larceny by bailee with regard to the Arapahoe school items. In overseeing the computer work at the Arapahoe school, Mr. Barker was supposed to return the items the school did not need or want. The items were not returned and were later discovered in Mr. Barker’s home. The affidavit accompanying the Information specifically identified Arapahoe school items, including a tape drive valued at $3,275.00.
 

 [¶32] The record indicates the district court was very discriminating about the evidence and the charges. The district court rejected the State’s allegation Mr. Barker had committed larceny by bailee of numerous other items because there was no evidence to show Mr. Barker had been entrusted with them. In comparing the charging documents with the judge’s oral ruling, it is clear Mr. Barker had adequate notice of the charge for which he was convicted — larceny by bailee of property valued at $500 of more.
 

 [¶ 33] Mr. Barker also claims the evidence offered by the State at the trial far exceeded the evidence necessary to establish his guilt on the items for which he - was convicted. Obviously, this is true because the State presented evidence pertaining to items the district court did not find him guilty of converting. We do not see the amount of evidence presented as creating a problem with Mr. Barker’s right to notice of the charges against him. It simply amounted to a failure of proof on the State’s part. Moreover, there was no prejudice to Mr. Barker since the district court specifically rejected the State’s contentions as to the other items. Mr. Barker’s constitutional right to notice of the charges against him was not violated.
 

 C. Evidence of Other Misconduct
 

 [¶ 34] At trial, the State introduced evidence showing the door to the warehouse was “jimmied open” during the time Mr. Barker was employed by CPU. Although CPU did not initially notice anything missing from the warehouse, it later discovered a computer was gone. The computer was found in Mr. Barker’s house when the search warrant was executed. The State presented evidence at trial that an electronic key card issued to Mr. Barker and another employee had been used to access the CPU business office during the time the warehouse was burglarized. Although Mr. Barker filed a pre-trial demand for notice of other misconduct evidence the State intended to introduce at trial pursuant to W.R.E. 404(b), the State did not give notice of the burglary evidence.
 

 [¶ 35] Mr. Barker argues the State violated Rule 404(b) when it presented the evidence of the burglary without following the procedures mandated by this Court in
 
 Howard v. State,
 
 2002 WY 40, 42 P.3d 483 (Wyo.2002). W.R.E. 404(b) governs the admissibility of a defendant’s uncharged misconduct:
 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 

 In
 
 Howard,
 
 we outlined a procedure which must be followed by the parties and the district court in receiving evidence pursuant to Rule 404(b). We held when “a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of such evidence.”
 
 Howard,
 
 ¶ 23, 42 P.3d at 490.
 
 See also, Williams v. State,
 
 2004 WY 117, ¶ 12, 99 P.3d 432, 439 (Wyo.2004). The State must then respond with sufficient information to meet the balance of our four-part test for determining the admissibility of other bad acts evidence.
 
 Howard,
 
 ¶ 23, 42 P.3d at 490;
 
 Williams,
 
 ¶ 13, 99 P.3d at 440-42. Wyoming’s test for the admissibility of other
 
 *118
 
 misconduct evidence is modeled after the test announced in
 
 Huddleston v. United States,
 
 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), under the comparable federal rule of evidence.
 

 The criteria set forth in
 
 Huddleston
 
 for the admission of Rule 404(b) evidence are: (I) The evidence is offered for a proper purpose; (2) The evidence is relevant; (3) The probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and, (4) Upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.
 
 [Huddleston],
 
 485 U.S. at 691, 108 S.Ct. 1496, 99 L.Ed.2d 771.
 

 Howard,
 
 ¶ 17, 42 P.3d a 487-88.
 
 See also, Gleason v. State,
 
 2002 WY 161, ¶ 18, 57 P.3d 332, 340 (Wyo.2002).
 

 [¶36] The State claims, however, no error resulted from the failure to follow
 
 Howard
 
 and
 
 Huddleston
 
 with regard to the burglary evidence because it was part and parcel of the evidence of a charged crime and did not fall under W.R.E. 404(b). The State’s argument implicates the distinction between intrinsic and extrinsic evidence.
 

 “Other act evidence is ‘intrinsic’ when the evidence of the other act and the evidence of the crime charged are ‘inextricably intertwined’ or both acts are part of a ‘single criminal episode’ or the other acts were ‘necessary preliminaries’ to the crime charged.”
 
 United States v. Williams,
 
 900 F.2d 823, 825 (5th Cir.1990).
 

 Howard,
 
 ¶ 12, 42 P.3d at 487.
 

 [¶ 37] Mr. Barker was charged with larceny by bailee and concealment of stolen property. Obviously, property acquired by burglary would not satisfy the “entrusted” element of Count I — larceny by bailee. § 6-3^402(b). It would, however, be relevant to Count II — concealment of stolen property. § 6-3^103(a)(i). Evidence tending to show the computer was stolen in a burglary and then ended up in Mr. Barker’s possession was inextricably intertwined with the State’s theory Mr. Barker knowingly concealed stolen property. Thus, the burglary evidence was properly presented as substantive evidence of a charged crime and did not fall within the purview of Rule 404(b).
 

 [¶ 38] Moreover, even if the evidence did come under the mandates of W.R.E. 404(b), any error in admitting it would be harmless under W.R.A.P. 9.04.
 
 See Holloman v. State,
 
 2005 WY 25, ¶¶ 19, 26, 106 P.3d 879, 885, 887 (Wyo.2005). The district court did not rely on the burglary evidence because it granted Mr. Barker’s motion for judgment of acquittal on the concealment of stolen property charge and did not find Mr. Barker guilty of larceny by bailee for the computer. Since the district court acquitted Mr. Barker on those charges, the evidence clearly did not convince the judge Mr. Barker had a criminal propensity and committed the charged crimes. Under Rule 404(b):
 

 The exclusion of bad acts evidence is founded not on the belief that the evidence is irrelevant but rather on a fear that the jury will tend to give it excessive weight and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds. Juries treat prior convictions as highly probative, and such reliance by the trier of fact offends the longstanding tradition that protects a criminal defendant from guilt by reputation and from unnecessary prejudice. Evidence of a prior crime diverts the attention of the jury from the question of the defendant’s responsibility for the crime charged to the improper use of his bad character.
 

 29 Am.Jur.2d,
 
 Evidence
 
 § 404 (1994). The concerns raised by admission of other misconduct evidence are less critical in a bench trial than in a trial to a jury.
 
 See, e.g., United States v. Turner,
 
 799 F.2d 627 (10th Cir.1986);
 
 United States v. Hassanzadeh,
 
 271 F.3d 574, 578 (4th Cir.2001). A trial judge is learned in the law and understands the need to convict - a defendant of the charged crime rather than on the basis of a general belief the defendant has a criminally-oriented disposition.
 
 Id.
 

 [¶ 39] The district court’s oral ruling showed the judge critically examined all of the evidence and found Mr. Barker guilty of larceny by bailee for only those items for which the State had proven each of the ele
 
 *119
 
 ments. Mr. Barker does not challenge the sufficiency of the evidence to support his conviction on those items. Consequently, Mr. Barker was not prejudiced by the admission of the burglary evidence.
 

 D. Ineffective Assistance of Counsel
 

 [¶40] In his final issue, Mr. Barker asserts he was denied his constitutional right to effective assistance from his trial counsel. Mr. Barker sets out two claims of ineffective assistance of counsel: 1) failure to protect his right to testify in his own defense; and 2) failure to adequately investigate and follow up on discovery matters which would have been helpful to his defense.
 
 [4]
 

 [¶ 41] A criminal defendant is guaranteed the right to effective assistance of counsel under the Sixth Amendment to the United States Constitution.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
 
 Blakeman,
 
 ¶ 29, 100 P.3d at 1237. To establish ineffective assistance of counsel, the “appellant must make the dual showings that his counsel’s performance was defective and that the deficient performance prejudiced his defense.”
 
 Dudley v. State,
 
 951 P.2d 1176, 1181 (Wyo.1998).
 
 See also, Sincock v. State,
 
 2003 WY 115, ¶ 34, 76 P.3d 323, 336 (Wyo.2003).
 

 When reviewing a claim of ineffective assistance of counsel, the paramount determination is whether, in light of all the circumstances, trial counsel’s acts or omissions were outside the wide range of professionally competent assistance. The reviewing court should indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment.
 

 Blakeman,
 
 ¶29, 100 P.3d at 1237, quoting Jackson, 902 P.2d at 1295.
 

 [¶ 42] As we stated earlier in this opinion, the ineffective assistance of counsel issue comes to us following two evi-dentiary hearings before the district court. Those hearings were held in accordance with the procedures established by this Court in
 
 Calene v. State,
 
 846 P.2d 679 (Wyo.1993). In reviewing the district court’s decision after a
 
 Calene
 
 hearing, we are presented with mixed questions of fact and law.
 
 Robinson,
 
 ¶ 14, 64 P.3d at 747. “[W]e will not disturb [the district] court’s findings of fact unless they are clearly erroneous or against the great weight of the evidence.”
 
 Robinson,
 
 ¶ 16, 64 P.3d at 748. We do, however, conduct a
 
 de novo
 
 review of the district court’s conclusions of law, including the questions of whether counsel’s conduct was deficient and whether the appellant was prejudiced by that deficient conduct.
 
 Id.
 

 [¶ 43] We turn first to Mr. Barker’s argument his trial counsel were ineffective because they did not sufficiently explain or protect his right to testify in his own defense. He claims his attorneys’ deficient performance left him with no genuine choice regarding his right to testify because he was forced to decide between testifying while impaired by diabetes or waiving his right to testify in his own defense. We have already considered and rejected Mr. Barker’s contention he was denied the right to testify in’ his own defense because the record supports the district court’s determination he knowingly and voluntarily waived that right. Mr. Barker claims, however, even if his waiver of the right to testify was knowing and voluntary, his counsel were still ineffective because they failed to properly explain the consequences of his waiver and did not make an adequate record of his diabetic episode in the district court. This argument is not convincing.
 

 [¶44] As described above, Mr. Barker and his attorneys discussed whether or not he should exercise his right to testify in his own defense. There were a number of considerations taken into account in determining whether he would testify. Mr. Bark
 
 *120
 
 er had concerns about how well he would perform during cross examination because he was not thinking clearly as a result of his high blood sugar levels. Irrespective of his diabetic condition, his defense attorneys had differing opinions about whether his testimony was necessary or would aid in his defense. The determination of whether Mr. Barker would testify was, ultimately, Mr. Barker’s to make,
 
 see, e.g., Siler v. State,
 
 2005 WY 73, ¶ 33, 115 P.3d 14, 31 (Wyo.2005);
 
 Florida v. Nixon,
 
 543 U.S. 175, 125 S.Ct. 551, 560, 160 L.Ed.2d 565 (2004), and there is no indication in the record the attorneys performed defi-ciently in advising Mr. Barker about his right to testify or improperly influenced his decision to waive that right. Moreover, even if his attorneys failed to adequately explain the process for, and consequences of, waiving the right to testify, the district court’s discussion with Mi'. Barker cured any deficiency in counsels’ performance and negated any possibility of showing prejudice. The district court informed him of his right to testify in his own defense and even offered him more time to discuss his decision with his attorneys. He did not accept that invitation and, instead, waived his right. We conclude Mr. Barker has not shown his counsels’ performance was deficient for failing to adequately inform him of his options regarding his right to testify.
 

 [¶ 45] Mr. Barker also claims defense counsel failed to make an adequate record of his diabetic condition. He does not specifically identify what steps he believes his attorneys should have taken or effectively explain how making a better record of his condition would have benefited him. In his initial brief, he argued the district court erred by denying his request for a continuance. The record indicates, however, this argument was misplaced because no request for a continuance was ever directed to the district court. At the second remand hearing, Mr. Barker changed his position and argued his attorneys were deficient because they did not request a continuance: It is not clear from his supplemental brief whether he still thinks his counsel were ineffective on this basis.
 

 [¶ 46] In any event, we conclude there is no basis for finding his counsels’ performance was deficient for failing to request a continuance. A district court has discretion in determining whether or not to grant a continuance.
 
 See, e.g., Young v. State,
 
 2005 WY 136, ¶ 9, 121 P.3d 145, 147 (Wyo.2005). Defense counsel did not have any objective information to support a motion for a continuance and both attorneys testified, without qualification, they did not observe anything in Mr. Barker’s behavior or demeanor indicating he was so impaired he could not proceed with the trial.
 
 See BSC v. Natrona County Dep’t of Family Serv. (In the Interest of CC),
 
 2004 WY 167, ¶¶ 23-27, 102 P.3d 890, 897-98 (Wyo.2004) (holding the district court did not abuse its discretion by denying appellant’s request for a continuance of the proceedings to terminate his parental rights on the basis he was “heavily medicated.”). Defense counsel did not perform defi-ciently by failing to request a continuance when they did not have an objective basis for the motion. As we stated in
 
 Olsen v. State,
 
 2003 WY 46, ¶ 84, 67 P.3d 536, 568 (Wyo. 2003), “[d]efense counsel is not required to make a motion without a basis.”
 
 See also, Murry v. State,
 
 713 P.2d 202, 212 (Wyo.1986).
 

 [¶ 47] Mr. Barker argues the fact his attorneys sought to reopen the evidence to allow him to testify supports his position they did not adequately protect his right to testify. The transcript of the hearing on Mr. Barker’s motion to reopen the evidence establishes his attorneys relied upon the special provisions of W.R.Cr.P. 33 which allow a district court, after a bench trial, to vacate the judgment and take additional testimony if the interests of justice so require. Defense counsel were plainly asking the district court to use its discretion to reopen the evidence in the interests of justice so Mr. Barker could testify. At that point, they had obtained the evidence of the blood sugar readings taken at the jail after Mr. Barker’s trial, providing a basis to ask the judge to reopen the evidence. During the trial, however, they had no independent evidence of Mr. Barker’s blood sugar levels or the effects of his diabetes on his ability to proceed. Thus, the fact the attorneys asked the district court to reopen the
 
 *121
 
 evidence to allow Mr. Barker to testify does not prove they failed to effectively protect his right to testify at trial.
 

 [¶ 48] Even after a hearing on the motion to reopen the evidence and two evidentiary hearings on Mr. Barker’s ineffective assistance of counsel claim, there is still no evidence Mr. Barker was impaired by his diabetic episode to such an extent he could not validly waive his right to testify or to justify a continuance of the trial. We, therefore, fail to see how making a “better” record about his diabetic condition would have benefited him. As explained above, Mr. Barker knowingly and voluntarily waived his right to testify, and there is simply no basis to conclude his attorneys’ performance in protecting his right to testify in his own defense was deficient.
 

 [¶ 49] Mr. Barker also claims he did not receive effective representation of counsel because his attorneys failed to conduct an adequate investigation into his defense he was lawfully in possession of the Arapahoe school items. Defense counsel , is charged with the duty of adequately investigating a defendant’s case.
 

 Our first detailed analysis of counsel’s duty to investigate came in
 
 Frias v. State,
 
 722 P.2d 135,145 (Wyo.1986):
 

 The United States Supreme Court has outlined trial counsel’s duty to investigate as follows:
 

 "' * * * [Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. * * * The reasonableness of counsel’s actions may be determined or substantially influenced by the defendant’s own statements or actions. Counsel’s actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. * * * [W]hat investigation decisions are reasonable depends critically on such information. * * * ’ (Emphasis added.)
 
 Strickland v. Washington,
 
 104 S.Ct. at 2066.”
 

 The reasonableness of investigation decisions depends on other evidence as well. “[I]n those cases involving claims of made quate investigation * * * consideration [must be given to] the strength of the evidence known to counsel that suggested further inquiry was needed.” 2 LaFave & Isr[ae]l, Crim.Proc. § 11.10(d) at 25 (1986 Pocket Part).
 

 Asch v. State,
 
 2003 WY 18, ¶ 40, 62 P.3d 945, 958 (Wyo.2003) (alterations in original);
 
 see also, Keats v. State,
 
 2005 WY 81, ¶ 20, 115 P.3d 1110, 1118 (Wyo.2005). Thus, “[t]he reasonableness of an attorney’s decision not to conduct an investigation is directly related to the information the defendant has supplied.”
 
 Coleman v. Brown,
 
 802 F.2d 1227, 1233 (10th Cir.1986);
 
 Strickland,
 
 466 U.S. at 691, 104 S.Ct. 2052.
 

 [¶ 50] Mr. Barker claims his trial counsel’s efforts to investigate his defense “fell short of the objective standards of reasonable professional judgment and did not reflect a reasonable strategic or tactical choice under all the circumstances” as provided by the United States Supreme Court in
 
 Wiggins v. Smith,
 
 539 U.S. 510, 521-23, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). At the first eviden-tiary hearing on his ineffective assistance of counsel claim, Mr. Barker testified he told his attorneys he and Mr. Wood often entered into agreements regarding computer equipment and memorialized those agreements through e-mails. He claimed he told his attorneys which servers and drives contained the e-mails. At the second evidentiary hearing, Mr. Barker provided more detailed testimony about the Arapahoe school tape drive. Mr. Barker testified the tape drive had been misplaced after he brought it back from the Arapahoe school but was eventually found by Mr. Adams (the warehouse manager), and Mr. Wood agreed to give it to him in payment for some work Mr. Barker had done for the company. He claimed this agreement was memorialized in e-mail correspondence and he informed his attorneys about it.
 

 [¶ 51] Defense counsel admitted Mr. Barker told them there was e-mail corre
 
 *122
 
 spondence supporting his defense. As a consequence, they demanded those e-mails in discovery from the State and served CPU with a subpoena duces tecum requesting numerous categories of information, although there was no specific request for e-mails. The defense was apparently initially dissatisfied with CPU’s response to its subpoena and filed a motion to compel. They did not, however, have the motion heard, and Mr. Barker claims their failure to follow up with the motion to compel amounted to deficient performance.
 

 [¶ 52] In response to Mr. Barker’s allegations of inadequate investigation, his counsel testified about several conversations with the prosecution. The State informed them Mr. Wood was turning over all the information he discovered at CPU to the State and the State was, in turn, providing it to the defense.
 
 [5]
 
 Defense counsel testified they had no reason to believe the State was not complying with its discovery obligations. Through their efforts, defense counsel obtained three e-mails they felt were favorable to Mr. Barker’s defense.
 

 [¶ 53] The defense attorneys denied Mr. Barker had told them there were specific emails memorializing an agreement with Mr. Wood about the Arapahoe school items. In fact, defense counsel expressed surprise by Mr. Barker’s testimony the tape drive had been found in the CPU warehouse and then given to him by Mr. Wood. They insisted he had not provided that information to them when they were preparing for trial. CPU employees testified at trial Mr. Barker helped “search” for the missing tape drive and even went so far as to suggest an Arapahoe school employee had stolen it. They did not indicate the tape drive had ever been located. Defense counsel stated, had they been aware of an express agreement about the Arapahoe school items, they would have used that information to cross-examine the witnesses at trial.
 

 [¶ 54] Although a few more e-mails were located during discovery on Mr. Barker’s ineffective assistance of counsel claim, they were not exculpatory or specifically beneficial to Mr. Barker’s position. Thus, there is still no evidence in the record, other than Mr. Barker’s uncorroborated assertions, to suggest any e-mails setting forth an agreement between Mr. Wood and Mr. Barker about the Arapahoe school items ever existed.
 

 [¶ 55] Mr. Barker also complains defense counsel failed to have the computer drives which were seized during the replevin action searched to determine whether they contained exculpatory e-mails and to have a defense expert review the computer equipment. Mr. Barker claims he told his attorneys the e-mails could be recovered from the drives taken by the authorities pursuant to the writ of replevin. Defense counsel admitted Mr. Barker told them relevant e-mails may be located on certain drives and servers. Prior to the trial, defense counsel obtained a court order allowing them to have an expert review the seized equipment. The State’s computer expert testified at the evidentiary hearing he had reviewed six hard drives in search of e-mails between Mr. Wood and Mr. Barker, although he was unable to access the data on two of the drives.
 

 [¶ 56] Defense counsel decided to forego a separate expert review after speaking with a computer expert employed by the public defender’s office because the State’s expert had used the same program the defense expert would have used to search for the emails. The State’s computer expert was not an investigator on the case but was used by the State only for technical computer matters. There was no indication the State’s expert was biased or willfully failed to produce all the relevant evidence he discovered. Mr. Barker admitted the software used by the State’s computer expert was the correct means to recover e-mails. After consultation with their computer expert, defense counsel were satisfied with the procedures used by the State’s expert to review the e-mails and indicated they did not feel additional review was necessary.
 

 
 *123
 
 [¶ 57] Mr. Wood testified, once the equipment seized pursuant to the writ of replevin was returned to CPU, it was “wiped clean” and resold to other customers. In addition, after a period of time, e-mails stored on the server were “written over” by more recent emails. To further complicate matters, CPU apparently replaced its server during the period between trial and the evidentiary hearing, further diminishing the possibility of ever recovering any e-mails. Mr. Barker, therefore, implies the e-mails which would have proven his innocence were forever lost by defense counsels’ lack of diligence in having those drivers and servers checked.
 

 [¶ 58] This case poses a classic credibility question. Other than Mr. Barker’s uncorroborated testimony, there was no evidence to show the missing e-mails ever existed or that Mr. Barker provided his attorneys sufficiently specific information about an alleged agreement pertaining to the Arapahoe school items. The district judge ruled Mr. Barker’s testimony was not credible: “I believe this allegation [of ineffective assistance of counsel] is not well based, not well-founded, and not supported by the evidence.” The district court believed defense counsels’ testimony that, if they had been told about the tape drive agreement, they would have cross-examined Mr. Wood and the other CPU employees about it. Although defense counsel carefully cross-examined the witnesses about numerous aspects of the ease, they did not -ask any questions suggesting Mr. Barker told them about a specific agreement with Mr. Wood about the tape drive. In absence of evidence contradicting the district judge’s determinations, we must defer to his judgment on the credibility of the witnesses, including Mr. Barker.
 
 [6]
 
 The district court’s factual determinations support its conclusions defense counsel conducted a reasonable investigation in pursuit of exculpatory e-mails and made a reasonable decision to cease their search when they believed they had sufSeient evidence to conduct his defense.
 

 [¶ 59] Mr. Barker has failed to overcome the strong presumption trial counsel rendered effective assistance. The record supports the district court’s conclusion that defense counsels’ representation fell within the wide range of professionally competent assistance. We conclude Mr. Barker’s attorneys’ performance was not deficient under the Sixth Amendment to the United States Constitution. Consequently, we do not reach the “prejudice” prong of the
 
 Strickland
 
 test for ineffective assistance of counsel.
 

 [¶ 60] Affirmed.
 

 [1]
 

 . At first, Mr. Barker worked as an independent contractor for CPU, but in November, 2001, he became a regular paid employee.
 

 [2]
 

 . At the time of the offense, Section 6-3-402(b) stated:
 

 A bailee, a public servant as defined by W.S. 6-5-101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another’s use is guilty of larceny.
 

 [3]
 

 . At the time of the offense, Section 6-3-403(a)(i) stated:
 

 (a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:
 

 (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more[.]
 

 [4]
 

 . In his initial appellate brief, Mr. Barker claimed his attorneys' performance was deficient because they failed to take "steps to get more meaningful notice of what they were supposed to defend against.” It is not clear whether Mr. Barker still claims his attorneys erred in that regard because his supplemental brief, following the second remand hearing, does not include this argument. Nevertheless, as explained in our discussions of his second and third issues, there was no error in the notice of charges or the admission of evidence. Consequently, Mr. Barker’s attorneys’ performance was not deficient for failing to address those issues at trial.
 

 [5]
 

 . It is not clear from the record whether these discussions took place before or after the motion to compel. We note it is not uncommon for a party to file a motion to compel discovery and then, prior to a hearing on, the motion, obtain information from his opponent negating the necessity of moving forward with the motion to compel.
 

 [6]
 

 . Mr. Barker expends considerable effort in his Supplemental Reply Brief attempting to show defense counsels' testimony and statements at the various hearings were inconsistent. After reviewing the voluminous record in this case, we are unable to find any material inconsistencies in the attorneys’ statements. There is simply no basis to reject the district court’s findings as to credibility and, consequently, we decline to do so.